LOUIS WINDMULLER et al.

v.

THE SPIRITS DISTRIBUTING COMPANY et al.

[Decided March 25th, 1914.]

1. As a rule each of several private trustees is severally liable for loss resulting from a joint breach of trust.

2. Since judicial trustees acting under the Corporation act and decrees of court, in insolvency and corporate dissolution proceedings, are severally, as well as jointly, liable for defaults in which they have joined, and since the title to the unpaid purchase-money, due from the purchaser of corporate assets in such proceedings, devolved on the surviving trustees, the representatives of a deceased trustee are not necessary parties to a suit against the surviving trustees to compel an accounting for trust funds, wrongfully used by them, though they are proper parties in view of the fact that the estate of a deceased trustee is liable for defaults in which he joined.

3. The rule that all parties liable should be before the court in proceedings for the distribution of trust funds is one of convenience to prevent further suits for distribution, and not a rule of necessity, and may be dispensed with for sufficient reason, for the purpose of rendering a final decree between the parties in court.

4. The decree authorizing the sale of corporate assets in insolvency and dissolution proceedings contemplated a sale for cash only, to be paid to trustees appointed by the court for immediate distribution *pro rata* among the preferred stockholders, but the judicial trustees conveyed the assets to the purchaser without requiring payment in cash of the entire price, and thereafter in effect loaned, without interest, the payments received to the purchaser for the purpose of carrying on the business, sub-

ject to be recalled by the trustees when the stockholders entitled to the payments applied to the trustees therefor; it being probable at the time that such application would not be made until termination of protracted litigation with a third person involving the payment of dividends by the corporation guaranteed by such third person.—*Held*, that the trustees were liable to the stockholders entitled to receive the purchase-money from the sale of the corporate assets for interest on the payments which they wrongfully loaned to the purchaser without interest.

5. Trustees who wrongfully invest or misapply trust funds for purposes of trade are chargeable with interest on such funds, and, if the trusts require annual payment to the beneficiaries, annual rests are made.

6. If trust funds are wrongfully used by the trustee in his own business, the *cestui que trust* has the option of either charging the trustee with compound interest on the amount misapplied or of taking the profits realized by the trustee therefrom.

7. Statutory and judicial trustees or receivers are held to the strictest liability for the improper use of trust funds.

Heard on petition and affidavits, answer and affidavits. On petition of Nathan Bijur, assignee.

The Spirits Distributing Company, a corporation of this state, voluntarily dissolved by proceedings under the Corporation act, and by decree in this suit dated July 8th, 1902, the answering defendants, directors of the company at the time of the dissolution, together with James A. Webb and Wm. F. Harrity, since deceased, were continued as trustees on dissolution under the statute. *Corporation act, Rev. 1896 § 56.* By the same decree the trustees were authorized and directed to accept the offer of another corporation, the Distilling Company of America, for the purchase of assets of the dissolved corporation specified in the offer (including the good will, brands, trade marks and trade names of the corporation), and the trustees were directed to convey these assets to the Distilling Company of America, "upon receiving the sum of $1,243,538.80 as the purchasing price thereof."

By the offer of purchase (as will appear by an examination of the same in the record) the purchaser had agreed to assume the payment of liabilities of the corporation amounting to $209,-910.03, and it was further declared by the decree that after de-.

duction of this amount from the purchase price, the sum of $1,-033,628.77 was left for actual distribution among the holders of the first preferred stock of the corporation at the rate of $82.69, for each share of the par value of $100. The decree established the holders of the first preferred stock at the time thereof (the whole number of such shares being twelve thousand five hundred), including among these stockholders the Distilling Company of America, the purchaser, which owned eleven thousand nine hundred and sixty-six shares, Mayer Arnold holding fifty-four shares for petitioner and Walter H. Liebman three hundred and fifty shares for petitioner, and Louis Windmuller ten shares. The decree then further proceeded as a decree of distribution of assets and directed that the trustees "forthwith make distribution of this sum of $1,033,628.77 among said first preferred stockholders," according to their respective holdings as established by the decree, with the further provision that

"said payments, however, shall not be required to be made, except to such of the said stockholders as shall present their certificates of first preferred stock and permit the endorsement of the payment of said dividends to be made thereon."

If was further provided by the decree that the Distilling Company of America, the purchaser of the assets, in making payment of the purchase-money, might tender to the trustees, and the trustees might accept

"on account of the purchase-money, and so far as the same shall extend, the receipts of the distilling company for its distributive share of the amount for distribution, and in such case, the balance of the purchase price, after payment of the liabilities aforesaid, to be distributed to the holders of the first preferred stock other than the distilling company."

Pursuant to this decree the trustees shortly after the decree, and before July 21st, 1902, conveyed the assets of the corporation to the distilling company, the conveyance being, as appears by the answer, of "the gross assets of the corporation subject to its liabilities," permitting the purchaser to pay the liabilities in such manner as might best preserve and conserve the assets sold. These liabilities have since been paid, as appears by the answer. The purchaser, as appears by its answer, did not elect to tender

receipts for its distributive share of the amount for distribution on account of the purchase-money, under the privilege given by the decree, but upon receiving the conveyance, paid to the trustees the sum of $989,468.54, being the same amount the purchaser would have been entitled to receive in cash as its *pro rata* share had the whole purchase price been paid in cash. The conveyance of the assets was made by the trustees without requiring at the time the further payment to them of the balance of $44,160.23, which was the amount the other stockholders were entitled to receive of the entire purchase-money. This partial payment in cash thus received by the trustees on the conveyance was not distributed *pro rata* among all the stockholders entitled, but was at once paid to the purchaser, as if entitled to receive from the trustees the whole of this price thus paid in cash, and not merely its proportionate share thereof. No security for the payment of the balance of the unpaid purchase-money was required, nor does any express agreement appear to have been made by the trustees with the purchaser as to the time or manner of its payment, and the sole arrangement made by the trustees in reference to securing any further portion of the unpaid purchase-money for the payment on these shares, seems to have been the one set out in the answer, viz.,

"that as and when these shares were presented in accordance with the decree, the trustees applied to the purchaser for the amount necessary to pay the holder, received the amount and paid to the holder, crediting the payment on account of the purchaser's bid."

This was done as to the one hundred and thirty shares not owned by petitioner and Windmuller. Neither upon the conveyance of the assets nor upon the payment to the purchaser of the entire cash payment received was any agreement made that the purchaser should pay any interest on the unpaid purchase-money, nor was any interest asked or paid on making the deferred payments aforesaid to pay on the one hundred and thirty shares. On July 21st, 1902, the trustees gave notice to Arnold and Liebman as holders of record of the stock belonging to petitioner, to present their certificates of stock and receive the amount coming to them under the decree, a copy of which was enclosed. No

formal notice seems to have been sent to the petitioner for whom, according to the decree, the Arnold and Liebman stock was held. Whether these notices were received by petitioner does not appear, but it appears by the petition that in March, 1912, Liebman and Arnold assigned to petitioner all the rights they might have by virtue of the order or decree of July 8th, 1902, and petitioner, under the decree and these assignments, now claims that he was entitled to receive as his distributive share under the decree on these four hundred and four shares thus held for him, the sum of $33,406.76. And on March 19th, 1912, he demanded this sum from the trustees, together with interest thereon, at the rate of six per cent. with annual rests. Defendants by their answer tender themselves ready to pay to petitioner the amount for the payment of which they were liable under the decree, and say that the purchaser, since July 21st, 1902, has been, and on March 19th, 1912, was able, ready and willing to pay the petitioner's distributive share, but that they had not at the time of filing the answer (July 2d, 1912) received from the purchaser any money applicable to the payment of petitioner's distributive share, nor had they received or earned, nor were they entitled to receive directly or indirectly any interest on any money remaining owing from the purchaser on account of its bid. They further say that the purchaser never in any way promised or undertook to pay, and is not obligated legally or otherwise to pay to defendant any interest whatever on any money remaining unpaid by the purchaser on account of its bid. They deny any liability for interest on their part.

On the application of the petitioner, and upon the admissions of this answer, an order was made directing that the trustees pay forthwith to the petitioner the principal sum of his distributive shares, without prejudice to the question of liability for interest, and the only substantial question now to be decided is that of the liability of the trustees for payment of interest, petitioner claiming that the trustees are liable for six per cent. interest with annual rests, and the trustees claiming that there is no liability whatever.

In explanation of the delay of the petitioner from 1902 to 1912 in presenting his claim for a distributive share, nothing has been presented on the record of this application, except an allegation

in the answer that in September, 1905, the petitioner, as the holder of these shares of stock of the Spirits Distributing Company now in question, had filed a bill against a certain other corporation called the Standard Distilling and Distributing Company, which had guaranteed the dividends on the preferred stock in the Spirits Distributing Company. This suit against the Standard company and its directors (five of whom were also the directors and trustees on dissolution of the Spirits Distributing Company) was for the purpose, among other things, of suspending the distribution of the assets of the Standard company on its proceedings for dissolution, until petitioner's claims against the latter company on this guarantee were determined. Litigation under this bill continued (as appears by the answer) in this court and the court of errors and appeals until June 19th, 1911, when the petitioner's bill was dismissed. The record of this suit was produced at the hearing and referred to by both parties at the argument and on the briefs, and from this record it will appear that petitioner claimed that the dissolution of the Standard Distilling Company had not terminated its liability on the guaranty of dividends on the Spirits Distributing Company stock, and that litigation on his part against the Standard company founded on this claim for dividends guaranteed had been pending in the courts of New York and of this state from 1902 up to June term, 1911, of the court of errors and appeals. *Bijur* v. *Standard, &c., Co.,* 74 N. J. Eq. 546; S. C. on appeal, 78 N. J. Eq. 582.

The formal objection is made by the answer and urged at the hearing that the petition is defective by reason of not making parties thereto the executors of the deceased trustees, Webb and Harrity. It does not appear, however, that either of these personal representatives has had any connection with the transfer of the assets or the unpaid purchase price.

*Messrs. Coult & Smith, Mr. Robert H. McCarter* and *Mr. B. N. Cardozo* and *G. H. Engelhard* (of the New York bar), for the petitioner.

*Messrs. Lindabury, Depue & Faulks* and *Mr. Levi Meyer* (of the Illinois bar) and *Mr. H. C. Deming* (of the New York bar), for the answering defendants.

EMERY, V. C. (after statement of facts and issues).

The objection as to defect in parties, because of omission to join the personal representatives of deceased trustees, is unfounded. The general rule as to trustees under private trusts is that each trustee is severally liable for a loss resulting from a joint breach of trust. *1 Lew. Trusts* *767, *772. *A fortiori* trustees and receivers, acting as judicial trustees, under the Corporation act and decrees of court in insolvency and dissolution proceedings, must be liable severally as well as jointly for defaults in which they have joined. The title to part of the trust property here in question (the unpaid purchase-money due from the purchaser) devolved on the survivors alone, with the right to recover it from the purchaser, and as to all of the trust fund or property, the trusteeship survives on the death of one of several joint trustees. And as it is the duty of the survivors to account for the trust fund and place it in a proper position, the representatives of a deceased trustee 'are not necessary parties to a suit or proceedings against the surviving trustees to account for the trust fund in their hands. *Beattie* v. *Johnstone* (*Vice-Chancellor Wigram, 1850*), *8 Hare 169.* As the estate of the deceased trustee is, however, liable to account for a default in which he joined, the representatives may be joined as proper parties. *Wilkinson* v. *Dodd, 40 N. J. Eq. 123, 141,* and cases cited.

*London Gas Light Co.* v. *Spottiswoode* (*Vice-Chancellor Bird, 1885*), *14 Beav. 264.* The general rule that all parties liable to a demand should be before the court, is a rule of convenience in procedure adopted to prevent further suits for contribution, and not a rule of necessity. *1 Dan. Ch. Pr.* (*6th Am. ed.*) **272.* It may therefore be dispensed with for sufficient reason, for the purpose of rendering a final decree between the parties in court.

The defendant trustees in this case were judicial trustees under the Corporation act and the decree of the court defining their powers and duties relating to the sale of the assets of the corporation, and the distribution of the proceeds of sale among the parties entitled, who were also fixed by the decree. The case as to their liability for interest stands as follows: The decree for sale was based on and contemplated a sale for cash only, with an immediate distribution *pro rata* of the entire purchase-

money available under the decree for that purpose among the preferred stockholders named in the decree. There was therefore a double default of the trustees; first, in conveying the assets, without requiring payment in cash of the entire purchase-money, and second, in immediately distributing or paying back to the purchaser alone the whole cash received upon the conveyance. As the amount of this payment was the purchaser's entire *pro rata* share of the whole purchase price fixed by the decree, the distribution was a partial preferential cash payment to this single stockholder to the extent of about $43,750. The entire assets were conveyed by the trustees for the purpose of continuing the use of them in carrying on the trade of the purchaser who received them for this purpose, without being required by the trustees to pay interest on the deferred purchase-money payment, and who did so use and hold them for over ten years. According to the claim presented in the arguments and briefs on behalf of defendants, the trustees and the purchaser as between themselves seem to have acted upon the idea that they were dealing altogether with unpaid purchase-money, payable by the purchaser to the trustees, and to be credited on its bid when afterwards paid, but without interest. But under the form which the purchase, conveyance and partial payment actually took by the choice of the purchaser, viz., the payment of cash instead of tendering receipts for the purchaser's distributive share of the entire purchase price, the form as well the legal effect of the transaction was to make the cash received from the purchaser by the trustees, money which was trust funds belonging to the trustees only for distribution *pro rata*. This transaction made the return of the entire cash payment to the purchaser, instead of merely its distributive share thereof, a misapplication by the trustees of the funds for distribution, to the extent of the over-payment. In either aspect of the case, the trustees are liable to the beneficiaries, whose shares in the purchase price have been wrongfully dealt with for the sole benefit of the purchaser. The principal having been paid over by order of the court, the question now to be decided is, whether by reason of these defaults or either of them, the trustees are liable to the shareholders whose share in the purchase

price have been thus wrongfully dealt with, for interest, when they have in fact received no interest, and if so, to what extent and how it shall be computed.

. Trustees under private deeds or documents, wrongfully investing or misapplying trust funds for the purposes of. trade, are liable for interest, and if the trusts require annual payments to beneficiaries, annual rests are made. This is done not by way of punishment (which would seem to be beyond the power of a court of equity, whose jurisdiction in this class of cases extends only to the protection of rights of property), but by way of returning to the beneficiaries, in compensation for their loss, that profit or return on the trust funds, which the trustee must be presumed to have made by the wrongful use of trust funds, either in his own trade or that of another. According to usual and ordinary methods of business, upon advances of funds for use in trade, annual rests are made. The trustee is therefore liable for such compound interest, when, according to the usual and ordinary methods in the business for which the loans were made, he would have been entitled to receive interest annually, and therefore must be presumed to have received it. If the funds are used in the trustee's own trade, the *cestui que trust* has in addition the option of taking the profits or compound interest. In *McKnight* v. *Walsh* (*Chancellor Zabriskie, 1872*), *23 N. J. Eq. 136, 146; S. C., affirmed on appeal, 24 N. J. Eq. 498* (at *pp. 509, &c.*) ; *Attorney-General* v. *Alford, 4 DeG. M. & G. 843,* and *Burdick* v. *Garrick* (*Court of Appeal, 1870*), *5 Ch. App. 241; S. C., 39 L. J. Ch. 369* (*Lord Chancellor Hatherly,* at *p. 373*) ; *Vyse* v. *Foster* (*Court of Appeal, 1872*), *8 L. R. Ch. 309,* these general principles upon which compound interest is chargeable against such trustees for willful default by the wrongful investment of funds in trade, either of themselves or others, are worked out. In the following case, compound interest was charged against the defaulting trustee, *Fowler* v. *Colt, 25 N. J. Eq. 202; S. C. on appeal, Salisbury* v. *Colt, 27 N. J. Eq. 492* (*1875*), where the trustees failed to separate and invest trust funds, but left them in stock of a company, and interest was payable annually. In *French* v. *Armstrong* (*Vice-Chancellor Stevens, 1912*), *79 N. J. Eq. 289,* an officer of

a building and loan association using funds in his hands for loans, was charged with compound interest for eight years. I think extended reference to numerous cases from other courts cited and analyzed by counsel on both sides in their elaborate briefs is unnecessary.

As the statutory and judicial trust was for receiving the purchase price and then holding and distributing, it is insisted that pending the delay in distribution, for which they were not in fault and during which they have received no interest, no interest should be allowed, and certainly not compound interest.

These trustees, however, did not in fact retain the funds for distribution without investment, in which case they might either not have been liable at all for interest, or not beyond the amount which the shareholder would have received on money paid into court, but they made the delay of the shareholder the occasion of wrongfully misapplying the funds in their hands solely as judicial trustees, for the purpose of benefiting the purchaser by the use thereof in its trade without interest. This circumstance, in my judgment, makes them liable to the beneficiaries for the money belonging to them in their hands which the trustees loaned out, and for the usual and ordinary interest on money so advanced for trade, which would be interest with annual rests. No trustees can retain profits derived by themselves from the use of trust funds in their trade, nor can trustees under private trusts, in my judgment, give away solely for the benefit of a third person's trade, the ordinary and usual return for the use of the trust money in their hands, without liability therefor. And statutory and judicial trustees or receivers are held to the most stringent rules of liability for the improper use of trust funds in their hands. Such trustees or receivers act under the obligations not only of ordinary trustees, but also as the officers of the court, upon whom the court, in protecting all parties interested, must depend for working out and assuring the safety and proper distribution of the corporate assets of which it has assumed control.

The fact that the principal of the trust funds improperly invested or misapplied was in some sort subject to be repaid on call, cannot in this case at all relax the liability of the trustees

for interest with annual rests, and for the plain reason that the trustees, according to their own answer, do not seem to have reserved the right to recall even the principal, except "as and when" the shareholders applied to them for payment of their share of the trust funds. These trustees holding trust funds or property pending distribution were not authorized to invest at all, and if they chose to invest, rather than pay into court, or ask for further instructions, were chargeable themselves with the protection of the *cestui que trust's* right to interest on the fund, as well as to the fund itself, and could not by any agreement with the lender, here a participator in the default, make the payment either of interest or principal dependent on the action of the *cestui que trust.* The shareholder not only had no control over the loan of the trust funds to the purchaser, but does not appear to have had any notice until the receipt of a letter from counsel in December, 1911, that the cash payable by the trustees as his share on dissolution had not been actually paid to the trustees, and had not been actually in their hands since the sale. Their answer in the Standard suit, which is set out in the trustees' answer to this petition, expressly stated that this fund

"is held by the trustees   *   *   *   and the same has yielded and is yielding no interest and producing no benefit to the distributing company or its trustees on dissolution or the Standard company or its trustees."

This statement construed fairly and in the sense in which it was manifestly intended to be taken, is substantially a statement that the money for petitioner's distributive share was then in the trustees' hands for payment to him and was so held uninvested. In this sense it was untrue. Had it been true, petitioner might perhaps not have had the right to charge the trustees with interest on a fund which was unproductive by no fault of theirs. But the real reason it was unproductive was their own default in loaning it for the benefit of the purchaser's trade, without any interest, and subject to call only when the beneficiary applied to the trustees. It was probable that such application would not be made until the close of the protracted litigation against the Standard company, for the reason that the acceptance of the distributive share on the principal sum of

the preferred stock might, as against the guarantor of the dividends, be claimed to terminate the guarantee. And the possibility that in petitioner's suit against the Standard company, this guarantee of dividends on the Spirits Distributing Company stock might be held to continue, may have been a reason for the purchaser paying cash, instead of tendering its own receipts for its distributive shares on this guaranteed stock.

The result of the arrangement between the trustees and the purchaser was to secure the benefit of the use in the purchaser's trade and without interest, and during a litigation which would probably be prolonged, of the portion of the fund in the hands of these judicial trustees, which belonged to the petitioner under the decree, and without any notice to him of this unauthorized use of the funds.

Under the entire circumstances appearing in the case, the trustees are chargeable with interest at six per cent. and with annual rests.