LANSING ZABRISKIE

*v.*

THE MORRIS AND ESSEX RAILROAD CO.

A trust to sell or improve lands; to invest and re-invest the proceeds; to collect rents and income; to pay taxes, assessments, commissions, and other annual expenses and charges; to pay over the net income, and to divide the estate, vests a fee simple title in the designated trustees, not limited to the lifetime of the donor's children, which trust descends to the heir at common law, the eldest son of the survivor of the trustees, and his contract to sell lands of the estate may be specifically enforced.

Bill for specific performance.

*Mr. L. Zabriskie, pro seipso.*

*Mr. J. D. Bedle,* for defendant.

THE CHANCELLOR.

By an agreement in writing duly made between the parties in October, 1878, the defendant agreed to purchase of the complainant two plots of land in Hudson county, on his making and delivering to it a good and sufficient deed of conveyance therefor, vesting in it a title in fee simple, free from all encumbrances, and he, on his part, agreed to sell and convey the property to the defendant for the price stipulated, so soon as he could make such title. The land was the property of John Tonnele at the time of his death, and the complainant claims title thereto under Mr. Tonnele's will, as the heir at common law of his father, the late

Zabriskie v. Morris and Essex R. R. Co.

Abraham O. Zabriskie, whose eldest son he is, and who was the last survivor of the executors and trustees under that instrument. The question presented for decision is whether he indeed has such title. Mr. Tonnele died in 1852. By his will, after making certain specific devises and bequests, he gave, devised and bequeathed all the rest and residue of his property, real and personal, to his eight children, to be equally divided among them in such manner that each child should receive only the net rents, income and profits of his or her share during his or her life; and he provided that at the death of each child, his or her share should go to and vest in his or her lawful issue; and in default of such issue living at his or her death, then to the testator's other children and their issue in the same manner as the share of each was thereby limited and given: the children of any deceased child to take their parents' share. And in order more fully to carry out the objects of the will he appointed and declared his executors to be trustees of all property, estate or interest therein given or devised to any of his children, or that any of his children might be entitled to by virtue of any provision of the will during the life of such child; with full power to retain all such property in their hands unsold and undivided until after the year 1867; and he thereby authorized them to sell and convey all or any part of his real estate, and all real estate that might be purchased by them, and to invest his personal estate and the proceeds of sale of his real estate at interest on bond and mortgage or in government or state stocks, or to lay them out in the improvement of his real estate, or the purchase of other real estate and the improvement thereof, as might seem most for the interest and advantage of his children, and for the improvement of his estate, and to change such investments as they should deem best from time to time. And he thereby ordered and directed them to pay over to each of his children during his or her natural life, the net income of that part or portion of his estate therein given or devised to such child, after deducting therefrom all taxes, assessments and commissions and other annual expenses and charges; the income of each of his daughters to be paid to her on her own receipt, for her own use, free from the control of

any husband; and that of his son to be paid to him on his own receipt, and not to any assignee or mortgagee thereof. He appointed his wife and Robert Gilchrist and Abraham O. Zabriskie executors. They all proved the will, and, as before stated, they are all dead, Mr. Zabriskie being the last survivor.

By the will the testator gave to his executors as trustees such control over the property, real and personal, given to his children by the residuary clause, as to necessitate the implication that he designed to give them the fee of the land. He expressly constituted and declared them to be trustees of the property. He empowered them to retain the real estate unsold and undivided until after 1867. As before stated, he died in 1852. He authorized them to sell and convey all or any part of the real estate and all that they might buy, and invest the proceeds in certain stocks, or in the purchase of other real estate, or in the improvement of his real estate, as they might think most for the advantage of his children and the improvement of his estate, and to change the investments from time to time. And he directed them to pay over to each of his children, during his or her life, the net income of the part or proportion of the estate given or devised to him or her, after deducting therefrom all taxes, assessments, commissions and other annual expenses and charges. The authority to divide the land among the children implies the gift of a fee. How were the trustees to divide it unless they had the power to convey? No express power to lease is given; but they are to pay over to each child, during his or her life, the net income of his or her share of the estate, real as well as personal, and that, too, after deducting not only annual taxes, but municipal assessments and commissions and other annual expenses and charges, whatever they might be. The power to sell and convey all his land and buy other land with the proceeds and take the title in their own names, is undoubtedly given. They might sell some of his land and spend the proceeds in improving the rest or any part of it. In short, complete power is given to convert the land into money, and to make such disposition of the proceeds in expenditures, in improvements or in investments, as they might see fit. This extensive authority is

utterly incompatible with the exercise of any control over the property by the children. They cannot sell or convey or encumber it. They are entitled to no control over it, indeed, so long as they live; for the trust is to pay to them the net rents and income for life. To the execution of such a trust as that under consideration, it is necessary that the trustee be clothed with the title in fee. Though the express devise is to the children themselves and there is no express devise to the trustees, that will not prevent the implication of the gift of the fee to the latter; for a direct devise may, by the context, be shown not to give the legal estate to the devisee named, and the legal estate may, if the purposes of the will require it, be held to be in trustees. In *Brewster* v. *Striker, 2 N. Y. 19*, there was a devise to grandchildren and their heirs forever, with direction that the estate be " disposed of" by the executors and the survivor of them and the executors or administrators of the survivor, not by sale or alienation, which were forbidden, but by lease; the rents, issues and profits to be paid to the " heirs " (grandchildren) annually; and it was also provided that if any of the heirs or their children should choose to occupy any part of the property, they were to be preferred as tenants. By a subsequent clause it was declared that if any of the grandchildren should die without issue, the share of such decedent should go to the survivors or survivor and the heirs of the survivor forever. It was held that the trustees took the legal estate by implication during the lifetimes of the grandchildren. See also *Doe* v. *Willan, 2 B. & Ald. 84*, and *Doe* v. *Cafe, 7 Exch. 675*. It is not necessary, however, to cite authorities for so obvious a proposition, resting, as it does, on the familiar principle that in testamentary dispositions the intention of the testator is to be sought for, and, when found, is to control the construction. That the testator's intention was to create a trust, and that one was created accordingly admits of no doubt. The trust is to sell, to improve, to invest and re-invest, to collect rents and income, to pay taxes and commissions, assessments and other annual expenses and charges, to pay net income over, and to divide the estate. The authority given is not a mere power of disposition which may be executed without any legal title, but

a trust of such a character as renders it necessary that the legal estate, the title in fee to the property, should be in the trustees. "The mere fact," says Mr. Jarman, "that the trustees are made agents in the application of the rents, is sufficient to give them the legal estate; as in the case of a simple devise to A upon trust to pay the rents to B. And it is immaterial in such a case that there is no direct devise to the trustees, if the intention that they shall take the estate can be collected from the will. Hence a devise to the intent that A shall receive the rents and pay them over to B, would clearly invest the legal estate in A." *2 Jarm. on Wills 201.* See also *Hawk. on Wills 140; Hill on Trustees 231, 232,* and *Perry on Trusts* § *213.* Nor can the purposes of the will in this case be answered by confining the legal estate to the lifetime of the children; for the trustees have power to lease and to sell and convey; and where a devise to trustees upon trusts which, standing alone, would not vest in them the whole legal estate, is followed or accompanied by a power to sell, lease or mortgage not limited to the period of the continuance of the active trusts, the trustees are held to take the whole legal fee, and not a mere limited estate, with a superadded power of sale, mortgage or leasing. *Hawk. on Wills 153; Barker* v. *Greenwood, 4 M. & W. 421.* Not to speak of other considerations, it was necessary that the trustees have power and authority to sue in their own names for injuries to the real estate, and to establish title thereto as against adverse claimants, and that in making improvements, whether by the erection of buildings or otherwise, they should have the legal ownership of the property improved. The case is obviously to be distinguished from those of which *Gest* v. *Flock, 1 Gr. Ch. 108,* and *Moores* v. *Moores, 12 Vr. 440,* are examples; for in them the gift was of a mere power which could be exercised without any estate in the donee thereof. In the case under consideration, at the death of the last survivor of the trustees, the trust still existed and was to continue as to the payment of the income to the children during the lives of the latter. The power (it was more; it was a trust) to convert that part of the real estate of which the testator died seized, which was still unsold, remained, and it was coupled with a duty to in-

vest and husband the proceeds in case of conversion, and pay over the net income or make improvements with them, if the trustee deemed best; and the trust to make division of it with the rest of the estate, if it remained unsold at the time of division, still continued. To the execution of this ample and extensive trust, co-extensive with complete ownership, an estate in fee in the trustee was not only convenient, but necessary. Nothing less would satisfy the trust. He, therefore, had such title. The last survivor did not devise the land. By law his estate therein descended to his heir at the common law, his eldest son, the complainant, who, therefore, can convey it in fee to the defendant. *Schenck* v. *Schenck, 1 C. E. Gr. 174; Wills* v. *Cooper, 1 Dutch. 137; Boston Franklinite Co.* v. *Condit, 4 C. E. Gr. 394; Rev. p. 1224, tit. Trustees,* § *1.*

There will be a decree for specific performance.