## MICHAEL J. O'BRIEN v. MARTHA E. KING AND ALBERT J. KING.

A grant of lands upon a public street, as a boundary, will be referred to such street as opened and used.

---

In ejectment. On rule to show cause.

The cause was tried before Judge Reed, at Hudson Circuit, without a jury. The following facts were found by the trial judge:

This is an action of ejectment, brought to recover a strip of land six and thirty hundredths feet in width, now in the possession of the defendants.

The parties to this action own adjoining lots, and the question involves the location of the correct line of boundary between them.

The land upon which both are situate was, in 1853, the property of Cornelius Van Vorst.

In that year he had a plan drawn upon paper, by which a tract (of which these lots were a part) was delineated as lots and streets.

Among the streets plotted upon this map, as running in an easterly and westerly direction, were North, Warren (now Congress) street and South street.

O'Brien v. King.

Among the streets running north and south is Webster avenue. The lots are numbered and front twenty-five feet upon the streets running north and south.

Lots 39 and 40 are on the east side of Webster avenue, between North and Centre streets. Lot 39 is owned by the plaintiff, and lot 40 by Martha E. King, wife of Albert J. King.

In May, 1853, Cornelius Van Vorst sold a portion of the tract he owned and had plotted, to Foster, Clinton and Hesketh, who bought for the Industrial Home Association. This grant included that part of block 10, on the map of the part of the Van Vorst estate, south of a line drawn parallel to the northeast side of Centre street, two hundred and seventy-five feet north in block No. 10.

In August, 1854, these three grantees conveyed lots 43 and 44 to George J. Hind. Lot No. 44 was the corner lot, fronting twenty-five feet on Webster avenue, and its south side bounding on Centre street. No 43 was the adjoining lot to the north.

In September, 1859, the same grantees conveyed to William Natruss lots Nos. 41 and 42, being the two northerly lots. No. 42 adjoining No. 43 of the former grant, and 41 adjoining 42.

When Van Vorst sold to Foster and others, in 1853, he had taken a mortgage for a part of the purchase money. This mortgage was foreclosed in 1864, and in July, 1866, Jacob Weart, the master appointed, under the foreclosure and decree, to make sale of such part of the mortgaged property as was essential to raise the money, sold, among other lots, the two lots the location of which is now under consideration—namely, 40 and 39.

No. 40 was sold, on July 9th, 1866, to Isabella Dominick, who sold, in 1870, to Albert J. King, who, in 1876, sold to his wife, the defendant; 39 was, on July 9th, 1866, sold to J. Flemming, who sold, in 1867, to Michael O'Brien, the present plaintiff.

- The present litigation arises from the fact proven in the case, that Centre street was not opened parallel with North

and South streets. It was plotted upon the map as a street running parallel with these streets at a certain distance from each. Centre street commenced at Palisade avenue at the point plotted upon the map. As it was opened it was deflected from the parallel line in which it was plotted, toward South street, so that the farther it ran the greater distance it was from the invisible line delineated upon the map. At the point where it intersected Webster avenue, the street, as opened, is six and thirty hundredths feet further toward South street than the street as plotted.

This results in leaving, between Centre street, as opened, and North street, six and thirty hundredths feet more land than that called for by the map.

The defendant's lot is located and built upon in accordance with the map. The plaintiff claims that he should be located in respect to the lines of the opened street.

That would draw the southerly lines of his lot six and thirty hundredths feet southward into the present occupied lot of defendant.

The facts concerning the physical marks of the adjacent properties are these: Congress street had been roughly opened by Van Vorst, as early as 1853, upon the lines where it now exists. In 1864 it had been regularly improved, flagged and curbed by the municipal authorities upon the same line.

In 1854 Hinds had built upon the corner lot, No. 44, a house, locating it in accord with Congress street as opened. No. 43 was also built upon and located in reference to the same line. In 1853 Natruss built upon the southerly part of 42, and five years later, built upon 41; all of these buildings were erected and lots located with reference to Congress street as opened.

So that in 1866, when 39 and 40 were sold, Congress street was an established, improved street, and the four lots between it and lot No. 40 were located and built upon with reference to the lines of such streets as then established in fact, and had been marked for thirteen years.

At this time no improvements existed between lot 41 and

North street, nor was the line of North street opened upon the ground, although there is evidence that its line had been marked by iron bolts.

When the purchaser of No. 40 located his lot he measured from the line of North street, which measurement, as has been observed, placed his lot six and thirty hundredths feet further northward than if he had, as the owners of 41, 42, 43 and 44 had done, measured from Centre street as opened.

This left a strip of ground between lot 40, as located, and lot 41, six and thirty hundredths feet wide. This strip the owners of 40 and 41 proceeded to divide between them.

When Mr. O'Brien, who lived in New York, came to examine his lot, I think in 1884, he found that King had built upon the north side of lot 41, as he had located.

He found that the owner of lot 38 had built upon the southerly line of his lot, which he had located in reference to Congress street, as were lots 36 and 37. North of 36, such lots as had been built upon, had been located in reference to the line of North street. This left a surplus to the north of 36 of six and thirty hundredths feet, which was also divided between adjoining owners.

In view of this juncture of circumstances, in respect to which point shall Nos. 39 and 40 be located? In respect to the line of North street, or to Centre street, as it has been opened?

The descriptions in the deeds from Mr. Weart call merely for lots Nos. 39 and 40 upon the Van Vorst map.

I am of the opinion that Centre street had become such an established monument, at the time of the conveyance by Mr. Weart of 39 and 40, and that the location of lots 41, 42, 43 and 44 had become monuments which must be relied upon as fixing the plotted lots upon this section of the Van Vorst map upon the ground. I say "this section of the Van Vorst map," for I accord much force to the deed made by Van Vorst to Foster and others.

It will be remembered that that deed conveyed a portion of land carved out by the entire tract. It did not convey all the

O'Brien v. King.

lots fronting on Webster street between North and Centre streets, but only eleven lots " south of a line parallel to the north side of Centre street, two hundred and seventy-five feet north, in block No. 10."

It is through this conveyance that both the plaintiff and defendants claim.

It, by its terms, fixes the location of the lots conveyed on the map, by a reference to a street which was then marked, and which, as marked, became an established street. The description, therefore, not merely inferentially fixes the southerly boundary upon the street, but it fixes the northerly boundary in reference to the street. The northerly boundary of these eleven lots is ascertained under this conveyance, not by reference to North street, but in respect to the line of Centre street.

All subsequent conveyances of lots included within this grant, although made by a general description of a number upon the Van Vorst map, must, in the location of that number, be controlled by the description of the Foster deed, through which the title comes. Now, in view of the history of the original opening and subsequent establishment of Centre street, of its recognition by the adjoining lot owners, by the location of the adjoining lots, I think that the opened Centre street must be regarded as a monument controlling the location of all the lots at least from 33 to 41.

The northerly line of 33 is a line parallel with the northerly line of the opened Centre street, and distant therefrom two hundred and seventy-five feet, and so on each twenty-five foot lot takes its width and pushes No. 40 six and thirty hundredths feet southward of present location.

I find that the title of all the land included in the plaintiff's declaration is in the plaintiff, and order judgment in accordance.

Argued before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the rule, *Vredenburgh & Garretson.*

*Contra, James Flemming.*

The opinion of the court was delivered by

KNAPP, J. The facts found by the trial judge, as they appear in the foregoing opinion, so far as they are essential to the determination of this case, are not controverted by the parties. The defendants, who move this rule, place their case upon the ground that the judge, on the facts so found, drew erroneous conclusions as to the proper location of the disputed line. I am persuaded, upon an examination of the case, that the determination of the judge as to the proper location of the disputed line is not open to criticism.

If, in the chain of title under which these parties came to their property, the intervention of the grant to Foster, Clinton and Hesketh in May, 1853, had not arisen, and the parties had taken title by description, merely referring to lots on the Van Vorst map, there would have been room to doubt the correctness of the result reached. But in view of that conveyance to the three parties from Van Vorst, which included the lots of these parties (in a tract of larger dimensions), Congress street was called for as a monument, from which such larger tract conveyed, took its northern boundaries. And although in that description, certain lots on the Van Vorst map are called for, yet while the arrangement and dimension of the lots so conveyed remained defined by the Van Vorst plan, Congress street, as then marked upon the ground, became the monument or base line from which the location of lots contained within that grant was to be made. Van Vorst or his heirs, having opened upon the ground definite lines for Congress street, acquiesced in by their grantees, under which these parties claim their title, such opening accepted and adopted by the public, and since improved and used by the public upon those lines, it becomes of little consequence in this case where such street should have been located under the mere guidance of the lines as originally placed upon the map of the Van Vorst property.

A grant of lands made upon a public street will be referred

Randolph v. Wood.

to the street as opened and used. *Smith* v. *State,* 3 *Zab.* 130 ; *S. C., Id.* 712 ; *De Veney* v. *Gallagher,* 5 *C. E. Green* 33 ; *Jackson* v. *Perrine,* 6 *Vroom* 137 ; *Den* v. *Van Houten,* 2 *Zab.* 61.

When the defendant's grantor purchased his lot in 1864, not only was this street opened and well defined, but all the lots on Webster avenue intervening between Congress street and his lot had been located and built upon, with a width of front in each equal to the quantity conveyed. Measuring from the street, as it existed, the northerly line of lot 41 was properly located, and this should have been conformed to in locating the defendants' lot. Under the plain rule, as illustrated in *Den* v. *Emerson,* 5 *Halst.* 284, the proper location of the defendant's lot was easy of ascertainment. Moving it six and three-tenths feet to the north of that line was an encroachment to that extent upon the plaintiff's property, and, although the division line in question as made, has stood for some eighteen years before suit brought, there is no evidence that the plaintiff or those under whom he claims, have assented to or acquiesced in such location. I am unable, therefore, to discover any reason for disturbing the conclusions which the trial judge arrived at.

The rule should therefore be discharged.