121 N.J. Super. 152 (1972)
296 A.2d 335
BRIGHTON CONSTRUCTION, INC., ET ALS., PLAINTIFFS,
v.
L & J ENTERPRISES, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
BENJ. GRUNAUER CO., INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 18, 1972.
*155 Mr. Richard K. Rosenberg for plaintiffs (Messrs. Heller and Laiks, attorneys).
Mr. Robert B. Hermes for defendant and third-party plaintiff.
Mr. Milton C. Yarrow for third-party defendant.
KOLE, J.C.C., Temporarily Assigned.
The basis of this action is a controversy surrounding the title to unimproved land located in the City of Paterson between 9th Avenue and East 29th Street. The land runs along the easterly side of what is now Route 20 for a distance of about 440 feet and along the westerly bank of the Passaic River for a distance of approximately 495 feet and varies in depth between these *156 boundaries from 35 to 175 feet, more or less. Viewed from a non-title perspective, the premises in question (hereinafter "the property") appear to be lands remaining in the area involved between Route 20 and the river after Route 20 was constructed.
Plaintiff Brighton Construction, Inc., contracted on August 2, 1971 with Benj. Grunauer Co. Inc. (hereinafter "Benj. Grunauer Co.") to purchase the property for $7,500 and recorded the contract. A title search thereafter uncovered an alleged outstanding interest in the property, a quitclaim deed of January 8, 1969, from the City of Paterson to Tenth Avenue Citizens League (hereinafter "League") which, in turn, on September 30, 1970 had conveyed its interest to defendant L & J Enterprises, Inc. The latter now disputes plaintiff's title (actually that of plaintiff's vendor). Plaintiff demands judgment declaring that defendant has no interest in the property and that Benj. Grunauer Co. has good title as against defendant's claim, and requiring defendant to execute an instrument removing any cloud from plaintiff's title.
Defendant, though admitting that title to the property was once held by The Benj. Grunauer Incorporated (hereinafter "Benj. Grunauer, Inc."), a corporation in dissolution, denies that Benj. Grunauer Co., plaintiff's vendor, has or has ever had title. Defendant further notes that the property was the subject of a complaint to quiet title in this court resulting in a judgment entered in favor of the League, defendant's alleged predecessor in title, on September 4, 1970 (Docket C 2566-68). Defendant has filed a counterclaim charging that plaintiff negligently claimed title to the property and that plaintiff's filing of the contract caused the cancellation of a contract that defendant had to sell the property for $58,000 to 30 Wildwood Corporation. Defendant demands judgment directing plaintiff to withdraw the contract from the record, divesting plaintiff of any interest in the property, and awarding compensatory and punitive damages, counsel fees and costs.
*157 Leveling demands for judgment similar to those made in its counterclaim, defendant has also filed a third-party complaint against plaintiff's vendor, Benj. Grunauer Co. In reply, the latter third-party defendant states that it has succeeded to the interests of Benj. Grunauer, Inc. and thus has title to the property; and that Betty Marke and Louise Syracuse, sole stockholders, officers and directors of Benj. Grunauer Co., as residuary legatees of the estate of William Grunauer, deceased, the last surviving stockholder, registered agent and trustee in dissolution of Benj. Grunauer, Inc., are entitled to control the disposition of the property.[1]
Finally, third-party defendant Benj. Grunauer Co. has filed a claim against defendant demanding judgment vacating the aforementioned quiet title judgment in favor of the League, defendant's predecessor in title; voiding defendant's deed to the property; confirming that the interests of Benj. Grunauer, Inc., including that in the property, are now held by Betty Marke and Louise Syracuse, as the residuary legatees of William Grunauer, and declaring that a deed conveying the property by Betty Marke and Louise Syracuse to plaintiff be a good deed, free from any lien or encumbrance occasioned by the judgment quieting title in the League.
Motions for summary judgment were made by all the parties and limited testimony was taken in connection therewith. The parties have acquiesced in the court's determination of the issue of title to the premises in question based on the affidavits and oral and documentary proofs presented.
I have considered the proofs and the law and make the findings predicated thereon which follow.
*158 Benjamin Grunauer acquired title to 15 3/4 acres on the west bank of the Passaic River in Paterson on September 12, 1903. The lands ran to the Passaic River. (Second Tract, Deed Book E 16, p. 332). A map of these lands, "Map of New Eastside Property of B. Grunauer, Paterson, N.J., Scale 80' per inch, Wm. Ferguson & Son, Surveyors, April 1904," was filed with the register of deeds on February 17, 1908 (Map. No. 366). This map (hereinafter "the map") delineates and numbers lots and streets, including a street, "Boulevard," which appears to run on or near the easterly margin of the 15 3/4 acres which bound the Passaic River. Prior to this map the "Bouvelard" did not exist as a street or proposed street.
On May 1, 1918 Benjamin Grunauer and his wife[2] conveyed to Benj. Grunauer, Inc. the 15 3/4-acre tract described in the 1903 deed (Deed Book B 27, p. 280). This conveyance in fact included those lots adjacent to the westerly edge of Boulevard (Lots Nos. 243, 245, 247, 249, 251, 253, 255, 257, 259, 261, 263, 265, 267 and 469) as shown on the map, but did not specifically refer to the map.
There is no disagreement among the parties to this action up to this point. But plaintiffs and third-party defendant on the one hand, and defendant on the other, visualize different chains of title to the property after 1918. By deed of October 31, 1919 (Deed Book A 28, p. 52), Benj. Grunauer, Inc. conveyed to Louis H. Grunauer by a metes and bounds description,[3] the lots adjacent to the westerly boundary of the Boulevard. The description also refers to the lot numbers in accordance with the map.
Defendant contends that Boulevard, as dedicated on the map, is a marginal highway extending to the banks of the Passaic River  i.e., a road laid along the extremity of *159 Benjamin Grunauer's property as shown on the map  and that the property, between the easterly boundary of Boulevard (State Route 20) as now constructed and the westerly banks of the Passaic River, was in fact a part of the land dedicated as a marginal highway and is still so dedicated, even though it is not now being used as part of such highway. Since, defendant's argument continues, abutting lot owners who take in a chain of title leading back to the dedicator of a marginal highway also take the fee interest in the entire adjoining highway or street, title to the property was conveyed out of Benj. Grunauer, Inc. by its deed of October 31, 1919 to Louis Grunauer transferring the abutting lots by reference to the map.
These lots adjacent to and forming the western boundary of the Boulevard eventually passed from Louis H. Grunauer, through several conveyances, to Rhoda Realty Co., Inc., by deed of December 13, 1929 (Deed Book V 35, p. 218). Rhoda Realty Co., Inc., by deed of March 3, 1931, conveyed to the State of New Jersey, in connection with its acquisition of land for the construction of Route 20, easterly sections of the aforementioned lots "together with all right, title and interest that the grantor herein may have in and to the Boulevard and Ninth Avenue." (Deed Book L 36, p. 12).[4]
Thus, according to defendant's version, the State of New Jersey had title to the property, it being part of the land dedicated as Boulevard and the State having acquired the abutting lot owners' fee interest in the area dedicated as Boulevard. Defendant's predecessor in title, The League, a New Jersey corporation not for profit, on January 8, 1969, through its attorney Harvey Goldberg, Esq., obtained a quitclaim deed from the City of Paterson (Deed Book I 87, p. *160 187).[5] The League thereafter instituted the aforementioned quiet title action and obtained the September 4, 1970 judgment quieting title to the property against a number of parties, including the State of New Jersey. The rights of the League to the property were obtained by defendant L & J Enterprises, Inc., pursuant to a September 30, 1970 deed for $200 (Deed Book U 89, p. 388). The aforementioned Harvey Goldberg is president of defendant, which is a business corporation.
Plaintiffs and third-party defendant agree that the October 31, 1919 deed by Benj. Grunauer, Inc. conveyed all of that corporation's interest in the previously mentioned lots abutting Boulevard and that the lots were conveyed pursuant to the map. But they contend that when Benjamin Grunauer, Inc. made the 1919 conveyance of lots by reference to the map, it dedicated, not a marginal road, but a road having adjacent to it lands on the easterly side of the Boulevard which it retained  i.e., that the property is not part of the lands dedicated as Boulevard, but lies between the eastern boundary of the dedicated Boulevard and the western banks of the Passaic River; and that third-party defendant Benjamin Grunauer Co., through Benj. Grunauer, Inc., a New Jersey corporation in dissolution since October 30, 1919, and its successors in interest, Marke and Syracuse, retain title and the authority to convey title to the property.
Defendant's claimed interest in the property stemming from the quitclaim deed given by the city and the judgment quieting title in favor of the League, defendant's predecessor, thus far has not been measured against that of plaintiffs and third-party defendant Benjamin Grunauer Co. Though evidence has been presented suggesting that Harvey Goldberg, attorney for the League and president of defendant, *161 knew of the possible alleged interest of third-party defendant in the property, the latter was not joined as a defendant in the quiet title action. Accordingly, although the nature of defendant's title established by that action may be binding and conclusive upon the parties therein, such as the State of New Jersey, it is not binding upon nonparties, such as the present plaintiffs and third-party defendant. N.J.S.A. 2A:62-6, 7; O'Neill v. State Hwy. Dept., 50 N.J. 307, 316 (1967). See Elmore Development Co. v. Binder, 97 N.J. Eq. 126, 131 (Ch. 1935), aff'd El Mora Development Corp. v. Horwitz, 98 N.J. Eq. 690 (E. & A. 1925).
The court has furnished counsel with the State Highway Department file relating to the quiet title action, which indicates why the State, although initially filing an answer denying the League's claim, ultimately did not defend, and judgment in that action was entered unopposed. Moreover, it appears far from clear whether defendant or its predecessor in title, the League, ever had any title or possessory interest at all in the property. Some such interest in the property in the League was a necessary prerequisite to the judgment quieting title. Bridgewater Leasing Corp. v. Wollman, 94 N.J. Super. 28, 36-37 (App. Div. 1967).
Defendant's own version of the property's chain of title places in doubt whether the city had any interest which it was able to pass to the League under the January 8, 1969 quitclaim deed. According to defendant the fee to the property was then in the State. If this is so, the city at one time may have had an easement in the property for public passage dedicated as part of Boulevard. But even if such an interest might provide a proper basis for an action to quiet title, that interest was likely acquired by the State before the quiet title action was instituted, through its superior powers when Boulevard became State Highway Route 20, and was not in the League when the action was commenced. New Jersey Interstate Bridge & Tunnel Commission *162 v. Jersey City, 93 N.J. Eq. 550, 553 (Ch. 1922); United R.R. and Canal Co. v. Jersey City, 71 N.J.L. 80 (Sup. Ct. 1904); Cunningham & Tischler "Dedication of Land in New Jersey," 15 Rutgers L. Rev. 377, 400, fn. 130 (1961).[6]
Assuming, however, that the city retained its easement of passage in the property after the State's acquisition of the fee from Rhoda Realty Co. Inc., and had such an interest when it executed the quitclaim deed to the League, such conveyance is not the proper vehicle for transfer to a private individual or corporation, even one not for profit, of a municipality's interest in land dedicated as a public right of way. State v. Cooper, 24 N.J. 261, 267 (1957). There is no evidence that the City of Paterson followed the then statutory procedure leading to extinguishment of the public thoroughfare by vacation or for the sale of its interest in the property, or that it abandoned the public rights to the property in the mode or manner prescribed by law. See e.g., N.J.S.A. 40:67-1, 19, 40:60-26, 28. See also Priory v. Manasquan, 39 N.J. Super. 147, 160 (App. Div. 1956); Lower Tp. v. Reeves, 14 N.J. Super. 180, 183 (Ch. Div. 1951); Osterweil v. Newark, 116 N.J.L. 227, 231 (E. & A. 1935); Newark v. Watson, 56 N.J.L. 667 (E. & A. 1894); State v. Cooper, supra, 24 N.J. at 267-268; Pt. Pleasant Manor Bldg. Co. v. Brown, 42 N.J. Super. 297, 305 (App. Div. 1956); Cunningham & Tischler, op. cit., at 409-413. Cf. Ott v. West New York, 92 N.J. Super. 184, 194-196 (Law Div. 1966). A quitclaim deed of the city's rights of this nature, if any, in the property is not an *163 abandonment by it of such rights. See Seabright v. Central R.R. Co., 73 N.J.L. 625, 632 (E. & A. 1906).[7]
Defendant takes the position that the city never had a highway easement over the property, relying on its contention that the State took fee title from Rhoda Realty Inc. to all of the land from the westerly line of Boulevard to the river banks, to the exclusion of any municipal highway rights. It finds the requisite possessory interest which the city quitclaimed to its predecessor in title, the League, in the fact that the city allowed the property to be used for the sale of Christmas trees and granted permits for such use. This claimed possessory interest, it contends, sufficed to give the League standing to institute and obtain the judgment in the quiet title action. In fact, it states, the quitclaim deed and the billing by the city of defendant thereafter for taxes on the property are adequate to estop the city from asserting any claim to the property as against defendant, citing Suburban Golf Club v. State Highway Comm'r, 92 N.J. Super. 125 (Law Div. 1966), and 405 Monroe Co. v. Asbury Park, 40 N.J. 457 (1963).
In view of the conclusions hereinafter reached, which can only affect the parties to this action, I need not determine the nature of the interest of the city or the League in the property, or whether the league had standing to pursue the quiet title action; nor need I determine what defendant's interest in the property is as against the city, or the effect of the judgment in the quiet title action as to the State.
In any event, plaintiffs and third-party defendant in this action, essentially directed at quieting title in their favor, cannot prove their claim of title by relying on the weakness of defendant's title; rather they must establish their own superior right and title to the property. Monesson v. Alsofrom, 82 N.J. Super. 587, 592 (App. Div. 1964).
*164 Defendant's claim to title to the property is based upon the assumption that Boulevard was dedicated as a marginal highway, and that, through the League, its predecessor in title, its title had been adjudged superior to that of the State of New Jersey which had acquired the naked fee to the dedicated area from the owner of the adjacent lots.
It is not disputed that the 1919 deed of lots adjacent to Boulevard from Benj. Grunauer, Inc. to Louis H. Grunauer pursuant to the map effectively dedicated Boulevard as a public right of way. The selling of lands with reference to the map (upon which lots and streets were delineated) constituted a dedication of Boulevard as a street or highway to the public, represented by the City of Paterson, and such dedication cannot be revoked except by consent of the municipality in the mode or manner prescribed by law. Brookdale Pk. Homes v. Bridgewater Tp., 115 N.J. Super. 489, 501 (Ch. Div. 1971); Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 124-125 (1956). See also State v. Cooper, Priory v. Manasquan and other cases cited supra.
An owner of a lot adjacent to a nonmarginal highway who can trace his title back to the dedicator of the highway, is presumed to take a naked fee only to the center of the street. But such an owner of a lot adjacent to a marginal highway is presumed to take more  a naked fee in the entire bed of the highway. Wolff v. Veterans of Foreign Wars, Post 4715, 5 N.J. 143, 151-152 (1950). In Wolff the court said as to the rights of an owner of a lot adjacent to a marginal highway:
The street was laid out as a marginal road on and along the southern extremity of the lands of the Edward B. Morris Realty Company. The weight of authority holds that in such a circumstance when a description like the one now before us is found in a deed from the dedicator of the street and owner of the subsoil and of the land adjoining on one side, the presumption is that the intention was to invest the grantee with all property rights in the full width of the highway. "Where the highway has been, as in the present *165 case, wholly made from and upon the margin of the grantor's land, his subsequent grant of the adjoining land should be deemed to comprehend the fee in the whole road-bed, upon the same principle that exists for giving the fee to the center in the other cases. The grantor shall be presumed to have intended by his conveyance the full investure of the grantee with all appurtenant property rights in the highway." [at 152]
See further, Annotation, 49 A.L.R.2d 982, 999-1001.
There is no doubt that Boulevard was dedicated as a highway. The basic issue is the extent of that dedication by the map in accordance with which lots were conveyed. Was the intent to dedicate, for example, Boulevard as a highway of normal width and to retain in Benjamin Grunauer and his successor in title, Benjamin Grunauer, Inc., land between the westerly banks of the river and the easterly line of Boulevard as shown on the map? If the answer is in the affirmative, the court would have to find that such land did in fact exist at the time of dedication and that the dedication thus was of a nonmarginal highway. If the answer is in the negative, Boulevard would have to be found by the court to be a marginal highway  that Benjamin Grunauer and Benjamin Grunauer, Inc. intended to dedicate as Boulevard all of the land from the westerly line of Boulevard as laid out on the map to the westerly banks of the river.
Primary evidence regarding a determination of whether a marginal or nonmarginal highway was dedicated may be supplied by the map. "In other states it seems generally to be held that the intent to dedicate land to public use must be clearly and unequivocally manifested." Cunningham & Tischler, op. cit., at 385. The New Jersey view is not completely settled. Many New Jersey cases find the dedication to be a mixed issue of law and fact and require a rather high standard of proof to establish a dedication. See Ibid, at 385-386, and cases cited therein. The most recent guide for interpretation of a map with respect to a street dedication was supplied by Judge Clapp in Pt. Pleasant Manor Building Co. v. Brown, 42 N.J. Super. 297, 303-304 (App. Div. *166 1956), certif. den. 23 N.J. 140 (1957), and is contrary to what appears to be generally the rule in other states:
If an inscription on a map or a description in a deed is unequivocal, then the question whether or not there is a dedication is for the court (indeed in certain circumstances the court will find that there is conclusively an intent to dedicate * * *). But if it is equivocal and an issue is raised on which reasonable minds may differ, the question becomes one of fact to be resolved by the * * * trier of the fact * * *. Cf. Osterweil v. City of Newark, 116 N.J.L. 227, 229, 230 (E. & A. 1936) (disapproving the statement in Soper v. Conly, 108 N.J. Eq. 370, 380 (Ch. 1929), affirmed 107 N.J. Eq. 537 (E. & A. 1931), that to establish a dedication, the proof must be strict, cogent and convincing). Indeed, equivocalities on a map prepared by an alleged dedicator, not only do not serve to prevent a dedication, but (rather the contrary) they are, generally speaking to be resolved against him and in favor of the public body. * * * However it should be observed that usually when an issue is raised respecting the intent to dedicate, the court should concern itself with the question whether or not in all likelihood the alleged dedicator had in fact wanted to make a voluntary donation to the public or had reason to represent that he was making such a donation.[8]
The map establishes streets and lots with number designations on what was then the property of Benjamin Grunauer. The area concerned is bounded on the east by the western boundary of Boulevard. Other than the area plotted, the map lacks detail and is generally blank. Except for Boulvard, width dimensions of all streets running through or abutting the plotted area are explicitly given. And while the westerly boundary of Boulevard, abutting as it does the carefully designated lots, is clearly established, the easterly boundary of that road is not so explicitly set  it is unclear, *167 for example, where the easterly edge of Boulevard is fixed and where the Passaic River banks begin.[9]
Since an unequivocal dedication of Boulevard as a marginal highway by any standard of proof cannot be established by the map, other evidence must be taken into consideration. Although doubts or equivocalities on a dedicator's map are generally resolved against the dedicator and in favor of the public, this rule is of less than universal application. Pt. Pleasant Manor Building Co. v. Brown, supra; Velasco v. Goldman Builders, Inc., 93 N.J. Super. 123, 137-138 (App. Div. 1966). Each case must be decided on the basis of the specific facts and considerations presented therein. Where a party to the dispute is a public body or one seeking to establish a right in the public to use the lands claimed to have been dedicated, or a person who is properly a successor in interest to the public body or having title because of the public body's lawful action, such a situation may very well be a factor warranting resolving a doubt in favor of finding a marginal highway. On the other hand, where, as here, neither party is such a person, the rule as to resolving such doubt might be otherwise. Indeed, in the latter instance, the party claiming the existence of a marginal highway may have the burden of proof on that issue, at least by a preponderance of the evidence. See Pt. Pleasant, supra; State v. Cooper, supra. Cf. Wolff v. Veterans of Foreign Wars, Post 4715, supra.
However, even without imposing such a burden on defendant in this case, I have determined from the proofs *168 that a marginal highway was not intended to be dedicated by the map and that title to the property was retained in the dedicator of Boulevard. I find that he intended to dedicate as Boulevard only so much of the land between its westerly line and the river as was actually used as a highway when Boulevard was constructed.[10] I hold, therefore, that the dedicator continued to hold fee title to the surplus land between the present easterly line of Boulevard (State Highway 20) and the westerly banks of the river.[11]
Defendant contends that the property, while presently east of the current Route 20, was part of the road-bed of Boulevard as originally laid. This argument is offered to suggest that contemporaneous with or within a few years *169 of dedication, it was the view of the City of Paterson that Boulevard had been dedicated as a marginal road, reserving no property on the west bank of the river to the dedicator. Defendant hypothecates that the State, in building Route 20, moved the road-bed westerly, failing to utilize the easterly portion of Boulevard as dedicated and originally built, such easterly portion being the property now in question. In support defendant offers a part of a plat of an "Atlas of the City of Paterson New Jersey," prepared by City Engineer J.M. Lathrop and published in 1915, which shows a Passaic Valley Sewer Commission sewer line following generally the center line of Boulevard. All parties agree that there is presently a Passaic Valley sewer line imbedded in the property in question. Defendant claims that this is the same line shown on the atlas plat. But this claim is not borne out by the proofs.
There is no evidence that this is the same line that once, according to the aforesaid plat, was generally centered in Boulevard, or that indeed the line was in the center thereof as there depicted. Furthermore, plaintiffs have presented persuasive evidence to the contrary. A July 1, 1914 Passaic Valley Sewerage Commission map shows Boulevard, and also a "main intercepting sewer" on what appears to be the property in question, east of Boulevard and west of the Passaic River. A present survey of the property shows the same sewer line in the property. A State Highway map, dated December 1929, relating to property to be acquired for Route 20 in the area here involved, which shows the Boulevard as it existed in 1927 and as actually used by the public, indicates the existence of land between the easterly line of the Boulevard and the river. State Highway plan and profile maps of Route 20, dated 1953, show not only such land and the sewer line therein but also trees and brush growing thereon and fences erected thereon. They also show a building located on lands between the Boulevard and the river to the south of the property involved herein. One of these highway profile maps and an earlier "Riparian Survey *170 Passaic River," made by the Civil Works Administration in 1934, show that buildings existed near the property here involved, between the river and the easterly side of Boulevard. A reasonable inference from these proofs, and I so find, is that Boulevard never actually ran to the river, and was never used by the public or intended to be used as a highway extending to the river banks.
Thus, I find that there is no persuasive evidence that Boulevard was dedicated as a marginal highway; rather, the proofs show it to have been nonmarginal. The map caused Boulevard to be dedicated but only clearly established its western boundary. In view of the circumstances of this case and my findings herein, a road so dedicated but not fully defined is properly deemed to be intended as one of reasonable width manifested by its actual user  i.e., the width of the present Route 20. See Cunningham and Tischler, op. cit., at 386, stating that the land area intended to be dedicated must be described so that it can be located on the earth's surface with reasonable certainty (citing Soper v. Conly, 108 N.J. Eq. 370, 380 (Ch. 1931), aff'd 107 N.J. Eq. 537 (E. & A. 1931), and 11 McQuillin, Municipal Corporations § 33.26.[12]
*171 The cases of Hoboken Land and Improvement Co. v. Mayor, etc., Hoboken, 36 N.J.L. 540 (E. & A. 1873), and South Amboy v. N.Y. & L.B.R.R. Co., 66 N.J.L. 623 (E. & A. 1901), are not to the contrary.
In Hoboken the dedication of the street was to a navigable river and its width was undefined. The court indicated, in favor of a claim by the city, that the dedication was to the banks of the river because it found that "the essence of the gift" intended by the dedicator was "the means of access to the public waters of the river the advantage of which induced the growth of the city by reason of its adjacency * * * with the important navigable waters * * * which give a peculiar commercial value to the lots put in the market by the dedication." The jury had found as a fact that the street as laid down on the map extended to the river at the time the map was made. The court stated that the value of such lots "can only be preserved by maintaining unbroken the connection of the streets and the navigable river. Any obstructions of that access would not only derogate from the effect of the gift but would also be a public nuisance." [L. at 36 N.J. 548] In the present case (1) the party claiming a dedication to the river is not the city and (2) the matter of preserving, or the dedicator's intent to preserve, access to the river is not involved.
In South Amboy, supra, the court stated that dedication of a street is a dedication of it in its entirety and that the *172 municipality cannot accept a fraction thereof and reject the balance. But there, unlike the present case, the street was plotted and defined on the map and express reference was made in conveyances to the map and "the confines of the street," and again, the claim sustained was that of the City in the public thoroughfare. Further, here the very issue is the extent or width of the street when dedicated; whether all or part of it was accepted by the municipality is not involved.
In any event, defendant itself, or its predecessor in title, the League, must have taken the factual position that Boulevard was not a marginal highway when dedicated at the time it instituted its action to quiet title against the State and others. In that action the State filed an answer denying generally the allegations of the complaint. Thereafter, on November 6, 1969 the Deputy Attorney General in charge of the case wrote Mr. Goldberg, attorney for the plaintiff League (and now president of defendant) acknowledging receipt of notice of a pretrial conference and stating that it "cannot find where the State Department of Transportation has any interest in this case. We will appreciate any advice that we may receive as to what possible interest the State can claim." On November 11, 1969 Goldberg answered, "in my opinion the State Department of Transportation has no interest [in the property]. We were requested by the title company to add the State * * * if they, in any way would recite some rights [in] * * * the above property." On November 13, 1969 the Deputy Attorney General answered Goldberg, acknowledging receipt of the November 11 letter and stating, "Since we have no interest of any kind in the case, we fail to see the necessity of appearing at pre-trial. Since you are not asserting any actual right against the State, will you please advise whether you will dismiss as to us." From what appears in the record, the League obtained an unopposed judgment quieting title in its favor against the State.
*173 Accordingly, in the quiet title action the factual position of defendant's predecessor in title  and thus defendant  must have been that Boulevard was not a marginal highway when dedicated. If it were a marginal highway, the State would have acquired all of the land from the westerly boundary of Boulevard to the westerly banks of the river when it obtained the conveyance from Rhoda Realty Co. Inc. in March 1931. The State, therefore, contrary to the opinion of Goldberg expressed in his letter of November 11, 1969 would have had a fee title interest in the property. Additionally, the fact that the State by letter acknowledged that it had no interest of any kind and requested a dismissal against it would appear to indicate that the State did not view Boulevard as a marginal highway.
Defendant may not, under the circumstances of this case, assume a factual position inconsistent with that taken by its predecessor in title in the quiet title action involving the same property. In re Allison's Estate, 106 N.J. Eq. 55 (Prerog. Ct. 1930), rearg. den. 107 N.J. Eq. 197 (Prerog. Ct. 1930); Stretch v. Watson, 6 N.J. Super. 456, aff'd in part, rev'd in part, 5 N.J. 268 (1950); Koppel v. Olaf Realty Corp., 56 N.J. Super. 109, 120 (Ch. Div. 1959), aff'd 62 N.J. Super. 103 (App. Div. 1960). See also, Vogel v. Red Star Express Lines, 73 N.J. Super. 534, 542 (App. Div. 1962), aff'd 40 N.J. 44 (1963).
Accordingly, defendant may not predicate its claim in this action on the ground that Boulevard when dedicated was a marginal road.[13]
*174 In view of the foregoing, based on the proofs before me, I find that Benj. Grunauer, Inc. retained title to the property when it conveyed the lots in accordance with the Map to Louis H. Grunauer on October 31, 1919, and that its successors in interest now have such title which is good as against defendant and superior to any interest which defendant may have or claim to have in the property.[14]
Judgment will be entered (1) declaring that title to the property be quieted against defendant and in favor of plaintiffs (Brighton Construction, Inc., Benj. Grunauer, Inc., Betty Marke and Louise Syracuse) and third-party defendant (Benj. Grunauer Co.);[15] (2) declaring that the League's judgment in the quiet title action to which plaintiffs and third-party defendant were not parties is not effective as to them and that defendant has not acquired any title to the property, by virtue of being the League's grantee, which is superior to that of plaintiffs and third-party defendant; (3) declaring that, as against any claim of defendant, fee simple title to the property is in Benj. Grunauer, Inc.  i.e., Benj. Grunauer, Incorporated, a corporation in dissolution since *175 October 30, 1919, and (4) declaring that such dissolved corporation and Betty Marke and Louise Syracuse, sole residuary legatees and representatives of William Grunauer, deceased, last stockholder and trustee in dissolution of the dissolved corporation, upon execution of a deed of the fee simple title to the property to plaintiff Brighton Construction, Inc., will have conveyed title that is good as against, and superior to, any claim of the defendant therein.[16]
The remaining demands for relief in the complaint and third-party complaint  vacation of the quiet title judgment in favor of the League and requiring defendant to execute an instrument removing any cloud from plaintiff's title  will not be granted. In the posture of this case, I am of the view that such relief would be inappropriate, involving as it does, an apparent collateral attack on the League's quiet title judgment. See Shultz v. Sanders, 38 N.J. Eq. 154, 157 (Ch. 1884), aff'd, Eisberg v. Shultz, 38 N.J. Eq. 293 (E. & A. 1884); Armstrong v. Brown, 19 N.J. Super. 528, 530 (Ch. Div. 1952).
*176 By reason of the conclusions reached herein, judgment will be entered dismissing, with prejudice, all of defendant's claims in its counterclaim and third-party complaint.
No costs will be allowed to any party.
NOTES
[1] Benjamin Grunauer, Inc. and its claimed successors in interest, Betty Marke and Louise Syracuse, were added as parties plaintiff by order of January 28, 1972. All claims and defenses of defendant L & J Enterprises, Inc., are deemed to apply to such added plaintiffs. As used herein the singular term "plaintiff" refers to Brighton Construction, Inc. only.
[2] Rosalie Grunauer, widow, was for some reason also a grantor.
[3] There appears to be an obvious error in the description. In its second course it refers to the "easterly line" of the Boulevard. It is apparent that "westerly" was intended.
[4] The deed into the State refers to "State Highway Route 3 (Rev. 1927) Section 4." All parties agree that this is in fact State Highway Route 20.
[5] The deed recited a nominal consideration: "$1.00 and other valuable consideration." No transfer fee was paid therefor, the stated reason being: "The grantor has no interest in the title of the lands to be conveyed."
[6] See State v. Cooper, 24 N.J. 261, 269 (1957), which reaffirms this principle but holds that the State must pay just compensation to the municipality when it appropriates municipal property held in a governmental capacity in certain circumstances. This latter issue is not involved in the present case.
[7] The fact that the city had no interest to convey is supported by the affidavit, which is part of the quitclaim deed from the city, prepared by the attorney for the League, reciting that the "grantor has no interest in the title of the lands to be conveyed."
[8] Whether the lesser degree of proof required to establish a dedication also applies to a case, such as this, where a dedication is evident but the only question is its extent, need not be decided in view of the conclusions reached herein. Cf. Blank v. Haddonfield, 96 N.J. Eq. 641 (E. & A. 1924), which states generally that "the existence and * * * extent of dedication" both involve a question of intent.
[9] Plaintiff Brighton produced testimony from one of its principals, an engineer, that the map's lack of detail as to the width of the Boulevard accords with the usual practice on such a map to fill in only a bare sketch of areas outside the land to be divided into lots. Accordingly, it is argued, the area east of Boulevard and west of the Passaic River banks,  the property , was not clearly delineated on the map because Benjamin Grunauer intended to retain that which was not actually used as a highway, i.e., as the Boulevard. I have not considered this testimony since it was the opinion of an interested party and is not substantiated by any other proofs.
[10] See Haven Homes v. Raritan Tp., 19 N.J. 239, 245-246 (1955) (the attributes of a public street include the whole surface for the ordinary purposes of a street); Wolff, supra, at 152 (speaking of the abutting land owner's interest in a marginal highway as being the fee "in the full width of the highway * * * `the whole roadbed'," suggesting that the interest may be in the highway as built). See further, O'Brien v. King, 49 N.J.L. 79 (Sup. Ct. 1886), which held that where platted lots, in actuality were bound by a street that did not correspond in placement with the street fixed by the plat, it was the street as actually built and used that served as the boundary for the adjacent lots. Compare the rule that generally the width of a road established by dedication is determined by the intention, while the width of a highway established by user is governed by the extent of user. Parsippany-Troy Hills Tp. v. Bowman, 3 N.J. 97, 107 (1949) (concurring opinion), and cases there cited; Lower Tp. v. Reeves, 14 N.J. Super. 180, 187 (Ch. Div. 1951). The present case involves a different factual situation, where the intent of the dedicator was to establish the width of the road dedicated by the extent of its actual user.
[11] As hereinafter indicated, there is no persuasive evidence in this case that the easterly line of Boulevard in the area involved has been changed in any substantial fashion since it was originally constructed or that the present easterly line of Route 20 in that area differs therefrom.

The dedicator and his successors in interest thus also retained title to the naked fee in the bed of the easterly half of Boulevard as so constructed and used, subject to the public highway easement. Wolff, supra.
[12] That the property here involved was not assessed for taxes by the city, or that the city on occasion permitted sales of Christmas trees on the property from time to time, is not decisive on the question of whether or not it was dedicated land. Currie v. Jersey City, 95 N.J. Eq. 412, 415-416 (Ch. 1924). Cf. Osterweil v. Newark, supra, 116 N.J.L. at 231; Pt. Pleasant Manor Building Co. v. Brown, supra, 42 N.J. Super. at 304; Trustees of M.E. Church, Hoboken v. Council of Hoboken, 33 N.J.L. 13, 26 (Sup. Ct. 1868). See also, Arnold v. Orange, 73 N.J. Eq. 280, 282 (Ch. 1907); Brookdale Pk. Homes v. Bridgewater Tp., 115 N.J. Super. 489, 501 (Ch. Div. 1971); Kiernan v. Primavera, 109 N.J. Super. 231, 235, 240-241 (Ch. Div. 1970); Wolff, supra, 5 N.J. at 149.

There is no merit in plaintiff's argument that the fact that the conveyance from Benjamin Grunauer or Benjamin Grunauer, Inc. contained a metes and bounds description mentioning only the westerly boundary of Boulevard in itself is proof of an intent not to dedicate a highway or a marginal highway. The fact that the conveyance also expressly or impliedly referred to the lots bordering the Boulevard on the map is sufficient for a highway dedication. See Salter v. Jonas, 39 N.J.L. 469 (E. & A. 1877); Wolff, supra; Pope v. Town of Union, 18 N.J. Eq. 282 (Ch. 1867); Haven Homes v. Raritan Tp., 19 N.J. 239, 244 (1955). Whether a marginal highway was here intended is a question of fact which must be resolved based on all of the evidence, and the map itself is unclear as to that issue. Plaintiff's reliance on Lambert v. Vare, 88 N.J. Eq. 81 (Ch. 1917) is misplaced. In Lambert the map and the description made it plain that the intent of the grantor was not to convey lands to the ocean and that she retained actual fractional lots between the lots conveyed and the ocean. This clear factual pattern does not exist in the instant case.
[13] In January 1968 Goldberg, on behalf of the League, unsuccessfully endeavored to obtain a deed to the property from "Benj. Grunauer Company" for $500 by negotiations with the Grunauer attorney. He testified that he did not then believe the company had any interest in the property. I do not agree with plaintiff that these negotiations constitute an estoppel against defendant's claim that third-party defendant and plaintiffs have no title to the property. However, the present litigation could have been avoided had the Grunauer company or interests been made parties to the League's quiet title action. Similarly, although the State may have in fact adopted the position that Boulevard was not a marginal highway, as discussed above, it would have been desirable to have joined it as a party to this action. In this fashion plaintiff's right to title as to the State could have been determined conclusively. See Michalski v. United States, 49 N.J. Super. 104, 110 (Ch. Div. 1958), cited in O'Neill v. State Highway Dept., supra; 49 Am. Jur., States, etc., §§ 103-104.
[14] The fact that the conveyance by Benjamin Grunauer, Inc. to Louis H. Grunauer stated that the lots on the map were conveyed by the corporation to Louis H. Grunauer as owner of all its capital stock on dissolution and therefore no consideration passed, does not militate against a finding that that corporation which was in dissolution continued to retain title to the surplus lands between the easterly line of Boulevard and the river if, in fact, the highway when dedicated was not marginal.
[15] The status of Benj. Grunauer Co. (i.e., Benj. Grunauer Co. Inc.) in its relation to the dissolved corporation is unclear. It may or may not be, in some fashion, a successor in interest to the dissolved corporation. If it is such a successor, its interest is superior to that of defendant.
[16] See Bridgewater Leasing Corp. v. Wollman, 94 N.J. Super. at 37 (App. Div. 1967).

As to the conveyance after dissolution of Benj. Grunauer Incorporated, see N.J.S.A. 14A:12-9; Boyd v. Hankinson, 83 F. 876 (D. Ct. 1899), rev'd on other gds. 92 F. 49 (4 Cir.1899); Joachim v. Belfus, 107 N.J. Eq. 240 (Ch. 1930), decree vacated on other gds. Joachim v. Joachim, 108 N.J. Eq. 622 (Ch. 1931). See further, R.S. 14:13-4; 19 Am. Jur.2d, Corporations, § 1679; Kennedy v. Island Development Co., 9 N.J. Misc. 921 (Cir. Ct. 1931). See also, Zabriskie v. Morris & Essex Realty Co., 33 N.J. Eq. 22 (Ch. 1880), aff'd 34 N.J. Eq. 282 (E. & A. 1881); 6 N.J. Practice, Wills and Administration, § 531 at 48; Windmuller v. Spirits Distrib. Co., 83 N.J. Eq. 6 (Ch. 1914).
I leave it to plaintiff whether to add third-party defendant Benj. Grunauer Co. Inc. as a grantor since it is a party to this action. See footnote 15. In any event, after the dissolved corporation and Betty Marke and Louise Syracuse were made parties, defendant no longer pressed its objection as to Benj. Grunauer Co. Inc.'s alleged lack of title, apparently accepting the fact that if title were quieted in favor of the dissolved corporation, plaintiff Brighton would be able to acquire title from such corporation and its successors in interest.