EDWIN M. WOLFF AND MATHILDA, HIS WIFE, PLAIN-
TIFFS-RESPONDENTS, v. VETERANS OF FOREIGN
WARS, POST 4715, DEFENDANT-APPELLANT.

Argued April 24, 1950—Reargued June 5, 1950—Decided
June 27, 1950.

144

*Mr. Herman D. Ringle* argued the cause for respondents (*Mr. Herbert Franklin Moore,* attorney).

*Mr. W. Douglas Blair* argued the cause for appellant (*Messrs. Blair & Blair,* attorneys).

The opinion of the court was delivered by

CASE, J. The appeal to the Appellate Division of the Superior Court was certified to us on our own motion.

Plaintiffs sued in ejectment to obtain possession of a lot of land in the Borough of Point Pleasant, measuring 50 feet by 100 feet, formerly the bed of a street dedicated as Leuckel Avenue, the street having been dedicated by the owner and subsequently vacated by municipal action. The land lies between the property of the defendant and other property of plaintiffs. The parties waived jury trial, stipulated such few facts as they considered were essential to decision and submitted the case to the court for determination of the legal questions. Judgment for possession was rendered in favor of the plaintiffs. Defendant appeals.

Edward B. Morris Realty Company, a corporation, owned a tract of land bordering on the northern boundary of, but not including any of the original land of, the plaintiffs. That corporation undertook a lot development and in so doing dedicated as a street, called Leuckel Avenue, a strip of land 50 feet in width beginning at St. Louis Avenue and running westerly therefrom an undefined distance. Its land was divided into lots, the taxes upon one of which were left unpaid. The Borough of Point Pleasant foreclosed its tax lien on that lot and on November 26, 1946, sold it to defendant. The lot was at the northwest corner of Leuckel Avenue and St. Louis Avenue, and the deed description follows:

"All that certain lot, tract, or parcel of land situate, lying and being in the Borough of Point Pleasant Beach, County of Ocean, and State of New Jersey, being known and designated as Lot 21 in Block 78 on the Assessment Map of the Borough of Point Pleasant Beach, County of Ocean, and State of New Jersey, and more particularly described as follows:

BEGINNING at a point, said point being at the intersection of the Westerly line of St. Louis Avenue and Northerly line of Leuckel Avenue and running, Thence (1) Northerly along the Westerly line of St. Louis Avenue 50 feet to a point, Thence (2) Westerly at right angles to St. Louis Avenue 100 feet to a point, Thence (3) Westerly (Southerly?) and parallel with St. Louis Avenue 50 feet to the Northerly line of Leuckel Avenue, Thence (4) Easterly along the Northerly Line of Leuckel Avenue 100 feet to the point or place of Beginning."

The pleadings show that the assessment upon which the tax proceedings were based was upon the lot described in defendant's deed. While the deed description is by reference to the assessment map, we take cognizance of the purpose and practice to have assessment maps conform to the divisions established by the owner for the purposes of transfer, and we infer, in the absence of proof from which an inference to the contrary may be drawn, that the lots shown on the assessment map followed the lines of the development map.

On December 5, 1946, the borough, by ordinance, vacated all public rights in Leuckel Avenue. Plaintiffs, at an undetermined time, acquired title to a plot of land which, while located at the southwest corner of Leuckel Avenue and St. Louis Avenue, was not a part of the holdings of the Edward B. Morris Realty Company. At some date, presumably, according to the complaint, March 22, 1949, plaintiffs obtained a bargain and sale deed from one John Ceremsak, surviving director and trustee in dissolution of the Edward B. Morris Realty Company, for the easterly end of Leuckel Avenue, measuring the full width (50 feet) of that former street and running to a depth of 150 feet. That land, except for the westerly 50 feet of its length, lies between the property of plaintiffs and the property of defendant. It, or at least a part of it, is in the active occupancy of defendant who claims as of right (1) to the middle thereof because their lot borders thereon and a predecessor in title owned and dedicated the street land and (2) beyond that to the entire width because plaintiffs, as to their original plot, acquired from an entirely different chain of title and had no privity with the dedicator.

The basic argument upon which plaintiffs claim the defendant has no right in the disputed land is that it was within the choice of the original owner, dedicator of the street, to convey or to withhold from conveyance the land from the side line to the middle of the street, that such owner did not convey to the borough, that the borough did not and could not assess the street land while the same was subject to the street easement, that since the borough could sell only what it possessed

and possessed only what it assessed, the land which the borough got, and therefore could sell, was the lot, as described, extending only to the side line of the street.

We think that the argument fails to credit to the plan as developed by the realty company the implications of purpose regarding the street lands. The narrow strip of land dedicated to the public as Leuckel Avenue occupied the extreme southern portion of the company lands. South of that strip was the land of strangers, among them plaintiffs or their predecessors in title. Adjoining on the north were the developer's lots, of which the defendant's lot was one. No suggestion is brought forward, much less is a fact shown, to indicate a purpose by the company to sever the title to the street land from that of adjacent lots.

 It is the recognized presumption of law in this State that deeds sold from maps are construed as passing title to the center of the street, subject to such easement as may have been legitimately obtained. *Brill v. Eastern New Jersey Power Co.,* 111 *N. J. L.* 224 (*E. & A.* 1933); *Freeman v. Sayre,* 48 *N. J. L.* 37 (*Sup. Ct.* 1886). The rule adopted in *Salter v. Jonas,* 39 *N. J. L.* 469 (*E. & A.* 1877), was that "nothing short of an intention expressed *in ipsis verbis,* to 'exclude' the soil of the highway, can exclude it." Chief Justice Beasley, writer of the opinion in the last-cited case, states the philosophy of the rule thus:

"In our practice, in the conveyance of lots bounded by streets, the prevailing belief is, that the street to its centre is conveyed with the lot. Among the mass of the people it is undoubtedly supposed that the street belongs, as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. This belief is so natural that it would not be easily eradicated. As a general practice, it would seem preposterous to sever the ownership to these several particles of property. Under ordinary circumstances, the thread of land constituting the street is of great value to the contiguous lots, and it is of no value separated from them. It would rarely occur that the vendee of a city lot would be willing to take it separated in ownership from the street, and it would as rarely occur that a vendor would desire to make such severance. In my own experience, I have never known such an intention to exist, and it is

safe to say that whenever it does exist, the conditions of the case are peculiar. And it is the very general notion that these two parcels of property are inseparably united, and pass as a whole by force of an ordinary conveyance, that accounts for the absence of any settled formula in general use for the description of city lots in a transfer of their title. Upon an examination of such conveyances, it would, I am satisfied, be disclosed that the utmost laxity in this respect prevails. The property conveyed is indiscriminately described as going to the street and running along it, or as going to one side of such street and thence running along such side. Such discriminations are not intentional, the purpose being to convey all the interest that the seller has in the property and in its belongings, and the mode of accomplishing this purpose is not the subject of attention, the street lot, as I have said, being regarded as a mere adjunct of the property sold, and worthless for any other use."

Increased uses of the subsoil as a part of the public easement have perhaps caused purchasers of city lots to place less importance on the ownership of the street lands than was the case at the time that opinion was written, but the discussion has both interest and value as marking the historical development and as stating the assertion that only rarely, and then only under peculiar conditions, does a vendor desire to make a severance is as true now as it was then. In the instant case there is not the remotest showing of an intention to exclude the soil of the highway from that of the adjoining lots or of a motive for doing so. Certainly, the belated act of the sole surviving director of that defunct corporate owner in conveying by deed of bargain and sale whatever vestige of interest was left in a limited portion of the street land may not be taken as a *nunc pro tunc* indication of purpose to sever the ownership of the soil in the street from that of the adjoining lands. The practical application of respondents' theory, as was frankly admitted at the oral argument, would mean that whenever a lot of land is sold on foreclosure of the lien for unpaid taxes, only the title as far as the street would pass. and the abutting soil in the street would remain in the defaulting owner, his heirs, devisees and assigns, ready to spring into full use and occupation if and when the street should be vacated; meanwhile free of the imposition of taxes, not within the compass of ordinary adverse possession, subject

to none of the burdens and few of the vicissitudes of other land ownership. We believe that, to use the language of the *Salter* decision, only when the conditions of the case are peculiar will such a happening arise.

It may, for the purposes of the argument, be assumed that the land in the street, while the street easement continued, had no assessable value. It does not necessarily follow that it was not an appurtenance, as Chancellor Green suggested, to the contiguous property. The subjection of land to various public uses may deprive it of present assessable value without destroying the principle that presumptively it is an appurtenance to that with which it is physically joined and which is assessable. It seems much more logical that, lacking proof *contra,* it should be regarded as belonging to one who owns the adjoining land from which it came, and who is carrying his share of the public load, than that it should have a title about which nobody knows, resting, like the subsoil itself, in the shadows, until, perchance, after long years, the public easement is lifted and value reattaches.

It will serve no purpose to distinguish all of the cases which respondents cite. Two will, we think, suffice; and we discuss them without expressing a view as to the matters there held:

*Ehren Realty Co. v. Magna Charta B. & L. Association,* 120 *N. J. Eq.* 136 (*Ch.* 1936), involved the foreclosure of a tax lien on a property which abutted the highway and which was servient to a property in the rear to the extent of bearing an easement of right of way to afford the latter property its sole access to the street. The question was whether the foreclosure of the tax lien, and the sale thereunder, deprived the property in the rear of its easement. The holding was that presumptively the assessor had included the easement in assessing the dominant tenement and had accordingly depreciated the value of the servient tenement, that the assessment of the servient tenement therefore did not embrace the easement, that only that could be sold which had been assessed, and that consequently the tax sale was subject to the easement. Respondents extract from the holding the statement that nothing

passes by a tax sale except what has been assessed, which makes it, in its application to the instant case, only a play upon words. The street land may be an appurtenance to and pass with the adjacent lot without adding or having any assessable value. There may be on the lot the ruinous remains of an ancient structure which add nothing either to its intrinsic value or its assessable value; nevertheless the ruins pass with the lot and are the property of the owner of the lot.

*Long Branch v. Highlands, &c., Steamboat Company,* 134 *N. J. Eq.* 266 (*Ch.* 1943), dealt with a certificate of tax sale. Three items were the subject of controversy: (1) the lands as shown on the official tax map; (2) contiguous land, being under the tidal waters of the Branchport Creek of the South Shrewsbury River, the subject of an earlier riparian grant and not shown on the tax map or separately assessed; and (3) the right of ingress and egress over a 20-foot strip of land, part of an adjoining property. It was held that both (2) and (3) were assessable but were not specifically assessed and that therefore only the lands designated as (1) would be affected by the decree in the suit to foreclose the tax certificate. The rule as to the underwater land had been stated by Mr. Justice Swayze in *Jersey City v. Board of Assessors,* 73 *N. J. L.* 164 (*Sup. Ct.* 1905), as follows:

"The proper method of assessment must be determined by the nature of the title of the defendants. If the defendants have title to the land under water, that land should be included with the land back of the exterior line for solid filling in a single description, or separately assessed by a distinct description. It should not be altogether omitted from the assessment and treated merely as increasing the value of the land back of the line. If, on the other hand, the defendants have only a right in the land under water as appurtenant to the land back of the exterior line for solid filling, the value of that right is properly included in an assessment upon the land back of the line."

Without entering upon an involved analysis, we direct attention to the final sentence of the quoted matter which states a principle wholly consistent with that being followed in the instant case. As to (3) we find no analogy with our own case in a decision which appears to pass upon whether an assessable

easement of private right of way over adjoining lands is presumed to be included, if unmentioned, in the assessment of the dominant tenement.

■ When lands are assessed by lots as designated by the developer who dedicates the adjoining land for street uses and does not make a clear exclusion it is to be assumed that the street land, to the center line of the street, is an appurtenance to the contiguous property and that the title to the latter, even when acquired by tax sale proceedings, carries with it the title to the former.

■ Moreover, we have the ancient legal conception, broader than the one expressed above, that an owner abutting a highway is presumed to own to the center of the highway, subject to the public easement. Chancellor Green stated it thus:

"The presumption of law is, that the owners of the land on each side of the street, own to the middle of the street, and have the exclusive right to the soil, subject to the right of way. It is objected by the defendants' answer, that the complainants' titles do not extend to the middle of the street, because the lots as described, are bounded by the sides of the streets. But the established inference of law is, that a conveyance of land bounded on a public highway, carries with it the fee to the centre of the road, as part and parcel of the grant."

*Hinchman, et al., v. Paterson Horse Railroad Co.,* 17 *N. J. Eq.* 75, 82 (*Ch.* 1864). That rule was referred to in *Salter v. Jonas, supra,* and the statement of it was quoted at length by the Court of Errors and Appeals in *Friedman v. Snare & Triest Co.,* 71 *N. J. L.* 605, 609 (1904). The Edward B. Morris Realty Company lost its ownership through its failure to carry the tax burden essential to the maintenance of government, having done nothing to rebut the presumption of ownership to the center line of the street by the owner of the adjacent lot.

■ By reason of the legal principles stated above and in recognition of the governmental processes by which essential tax collections are enforced, we are led to the conclusion that the land abutting that parcel and extending to the center line of the street was an appurtenance to the parcel, was not either

directly or by implication severed therefrom, was within the application of the tax lien and therefore was included in the sale following the foreclosure of that lien. It follows that the defendant owned that much of the street land, subject to the lien of the public easement, and, after the proceedings to vacate, free of the easement, and may not be ejected therefrom.

We come to the question of the land between the center line and the southerly or far side of the street. No presumption runs in favor of the plaintiffs by reason of their ownership of the land to the south of the street for the reason that the street land does not come within their chain of title. The street was laid out as a marginal road on and along the southern extremity of the lands of the Edward B. Morris Realty Company. The weight of authority holds that in such a circumstance when a description like the one now before us is found in a deed from the dedicator of the street and owner of the subsoil and of the land adjoining on one side, the presumption is that the intention was to invest the grantee with all property rights in the full width of the highway. "Where the highway has been, as in the present case, wholly made from and upon the margin of the grantor's land, his subsequent grant of the adjoining land should be deemed to comprehend the fee in the whole road-bed, upon the same principle that exists for giving the fee to the center in the other cases. The grantor should be presumed to have intended by his conveyance the full investiture of the grantee with all appurtenant property rights in the highway." *Haberman v. Baker,* 128 *N. Y.* 253, 28 *N. E.* 370 (*N. Y. Court of Appeals* 1891). *Cf. Johnson v. Grenell,* 188 *N. Y.* 407, 81 *N. E.* 161 (*N. Y. Court of Appeals* 1907) ; *Irvin v. Crammond,* 58 *Ind. App.* 540, 108 *N. E.* 539 (*Appellate Ct. of Ind. Div. No.* 1 1915) ; *Brackney v. Boyd,* 71 *Ind. App.* 592, 125 *N. E.* 238 (*Appellate Ct. of Ind. Div. No.* 2 1919) ; *Healey v. Babbitt,* 14 *R. I.* 533 (*Sup. Ct. R. I.* 1884). The principle as applied in the cited cases turns upon the existence of a deed from an owner who had dedicated his marginal lands to public use as a road, but we think that it may also be applied to a tax assess-

ment which is laid upon the adjoining land while that land is still in the common owner. Conceding the authority of such an owner to separate the rights to the road-bed from the rights to the adjoining land, it is not, we believe, to be presumed that the failure to manifest such a purpose will *per se* exclude the rights to the road-bed from the appurtenances to the adjoining land or from the assessment placed on that land. Rather is it to be presumed that when a public use is impressed on marginal lands the rule which applies normally as far as the center of the street shall extend to the full width of the same.

The 1949 deed from Ceremsak, surviving director and trustee in dissolution, conveyed no interest in the lands formerly occupied by Leuckel Avenue between the property line of the defendant and the southerly line of that street because the corporation had been foreclosed of any interest therein. The pleadings are somewhat confused in that the plaintiffs appear to claim under the deed of Ceremsak, surviving director, etc., to a distance of 150 feet from St. Louis Avenue, whereas the defendant, while categorically denying the right of the plaintiffs to possess that tract, asserts no right of possession in itself beyond the distance of 100 feet which measures the depth of its lot. We pass no judgment upon the surplusage of 50 feet except to say that the defendant is not entitled to the possession thereof and to express our understanding that it is not being litigated herein.

It is further to be noted that no question of surviving right of way over the land of the vacated street is presented or argued.

The judgment of possession in favor of the plaintiffs entered in the Superior Court will be reversed, with costs. The record will be remanded to the end that judgment in favor of the defendant be entered.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT and BURLING—4.

*For affirmance*—Justice HEHER—1.