THOMPSON, Judge.
This appeal arose out of a petition to vacate a portion of Virginia Street, which is located within the city limits of Mobile, that was filed by the City of Mobile (“the City”) at the request of the State of Alabama, by and through the Alabama State Port Authority (“the Port Authority”). The portion of Virginia Street at issue generally runs west to east and lies between Water Street and the channel of the Mobile River. The subject right-of-way is 50 feet wide and approximately 2,000 feet long. The Port Authority owns the property abutting the right-of-way to the south. Mobile River Terminal Company, Inc. (“MRT”), owns the property abutting the right-of-way to the north.[1]
*765 The Port Authority and MRT, along with numerous other persons and entities, were named as defendants in the City’s petition to vacate. The Port Authority answered the petition to vacate and joined in the City’s request that the street be vacated. The Port Authority also filed a cross-claim against MRT requesting that the probate court declare, upon vacation, that fee-simple title to the entire right-of-way be vested in the Port Authority. Thereafter, MRT answered the City’s petition as well as the Port Authority’s cross-claim; MRT also filed a cross-claim against the Port Authority, asserting that upon vacation title to the right-of-way should be divided equally between the Port Authority and MRT. After the Port Authority answered MRT’s cross-claim, MRT filed an amended cross-claim asserting, as an alternative theory, that upon vacation MRT would own certain portions of the right-of-way by adverse possession. Thereafter, the Port Authority answered MRT’s amended cross-claim.
On August 28, 2003, the probate court held a hearing in which it received ore tenus evidence; numerous exhibits consisting of, among other things, deeds and other documents rélating to the right-of-way were also admitted into evidence. The Port Authority and MRT were the only defendants that appeared at the hearing; neither of them objected to vacating the right-of-way. The Port Authority contended that upon vacation fee-simple title to the entire right-of-way should be vested in the Port Authority because, it claimed, the right-of-way was situated entirely within the land of the Port Authority’s predecessor in title and MRT’s predecessor in title had contributed no land to the right-of-way. MRT, on the other hand, contended that because MRT is the owner of the land abutting the north side of the right-of-way, upon vacation, MRT and the Port Authority should each receive title to one-half of the underlying fee of the right-of-way.
On December 23, 2003, the probate court entered a judgment granting the City’s petition and declaring that the subject portion of Virginia Street was vacated; [2] the probate court further declared that the underlying fee of right-of-way would be divided at the center line, with MRT owning the northern half of the right-of-way and the Port Authority owning the southern half. In its judgment, the probate court stated, in pertinent part:
“9. The [right-of-way] has been the subject of litigation previously. See City of Mobile v. Chapman, 202 Ala. 194[, 79 So. 566] (1918). The Alabama Supreme Court’s recitation of the facts concerning the matter before it, as well as its ruling, have special significance in the instant cause.
“10. In City of Mobile, Delena Chapman, one of the daughters of John Lawrence Lavretta sued the City of Mobile and others to enjoin the City of Mobile from laying a sanitary sewer line along what was depicted on two (2) maps to be Virginia Street. Chapman contended that Virginia Street, as depicted on said maps, was not a dedicated roadway. The Circuit Court of Mobile County, Chancery Division, granted Delena Chapman the requested relief, but, recognizing the City of Mobile’s right of eminent domain, allowed the municipality 30 days within which to institute con *766 demnation. The City of Mobile appealed, and the Alabama Supreme Court reversed the lower court’s decision. A close review of City of Mobile indicates that the appellate decision turned in large part on the reliance to be given to maps and references in maps in real estate conveyance documents. City of Mobile, 202 Ala. at 199-202.
“11. One of the maps that was the subject of review and discussion in City of Mobile was a map prepared in conjunction with an earlier partition suit involving the same property. This map was referred to as the ‘Brewer and Bell Map.’ The Alabama Supreme Court reprinted the Brewer and Bell Map as Exhibit Number 1 in City of Mobile. City of Mobile, 202 Ala. at 195-196.
“12. The earlier partition suit was instituted in the Circuit Court of Mobile County, Chancery Division, on September 20, 1851. A decree for partition and the appointment of commissioners was entered on January 7, 1852. The subsequent report of the commissioners of the partition was made about April 12, 1852, and the several allotments to the owners, of their respective tracts, were confirmed by a decree dated April 16, 1852. City of Mobile, 202 Ala. at 198-199.
“13. In the earlier partition suit, the allotment made by the commissioners to H.O. Brewer and Issac Bell, Jr., together with the decree of confirmation, employed an incomplete description of the locations and dimensions of streets. Without the map referred to and made a part of the partition proceeding and decree therein, the streets that traversed the subject lands could not be located. City of Mobile, 202 Ala. at 199. The map indicated that Virginia Street was open from Conception Street eastwardly to the channel of the Mobile River. City of Mobile, 202 Ala. at 200.
“14. The second map that was the subject of review and discussion in City of Mobile, was prepared by Lewis Troost, who served at some point in time as the city engineer for the City of Mobile. This map was reprinted by the Alabama Supreme Court in City of Mobile, as Exhibit Number 2. City of Mobile, 202 Ala. at 196. Likewise, this map indicated that Virginia Street was open from Conception Street to the Mobile River. City of Mobile, 202 Ala. at 200.
“15. In City of Mobile, the Alabama Supreme Court held that for purposes of: (A) interpreting the conveyance to John Lawrence Lavretta, Delena Chapman’s predecessor in title; and (B) ascertaining the intention of the parties to the deed granting title to John Lawrence Lavretta, as to the existence, locations, dimensions, and extent of the streets, lots, and blocks indicated thereon, the maps referred to in the decree of the Circuit Court of Mobile County, Chancery Division, in the above referenced partition suit and in the deed granting title to John Lawrence Lavret-ta became a part of the title to the lands that were the subject of the litigation in City of Mobile. City of Mobile, 202 Ala. at 200.
“16. The Alabama Supreme Court determined that Virginia Street was a dedicated roadway, which preceded the Brewer and Bell allotment. Since the Brewer and Bell allotment was subject to Virginia Street, the subsequent conveyance to John Lawrence Lavretta was subject to Virginia Street. City of Mobile, 202 Ala. at 202.
“17. The exhibits submitted by the parties in the instant cause were admit *767 ted into evidence without objection. Two of the exhibits are noteworthy. MRT’s Exhibit Number 3 is the map of the lands of the Estate of J.L. [John Lawrence] Lavretta, which map is recorded in Deed Book 80 at Page 1 in the records maintained by the Court. Said map makes reference to the deed recorded in Deed Book 78 at Page 481 in the records maintained by the Court. The deed recorded in Deed Book 78 at Page 481 is MRT’s Exhibit Number 2. In the body of said deed, the Brewer and Bell Map, which was denominated as Exhibit 1 in City of Mobile, is referenced and the conveyance outlined in said deed was expressly subject to the Brewer and Bell Map.
“18. John Lawrence Lavretta, the common source of title to the Port Authority’s and MRT’s properties, never possessed title to Virginia Street, part of which now constitutes the [right-of-way].
“19. The conveyances, which • split the John Lawrence Lavretta property among three of his heirs, were made subject to the maps which identified Virginia Street east from Conception Street to the Mobile River. The conveyances made by the Lavretta heirs used Virginia Street as a source of reference for the metes and bounds descriptions.
“20. All subsequent conveyances by John Lawrence Lavretta’s successors in title were subject to Virginia Street.
“21. It is a fundamental concept in American real estate jurisprudence that a grantee or successor in title can not obtain more by conveyance than the grantor or their predecessor in title possessed.
“22. The successors in title of John Lawrence Lavretta’s property took subject to the same easements, restrictions and rights of way to which John Lawrence Lavretta was subject.
“23. Neither the Port Authority, nor MRT, have demonstrated to the Court that they, or their respective predecessors in title since John Lawrence La-vretta, owned their respective properties free of Virginia Street.
“24. The general rule is that when a right of way is vacated, the underlying fee title of the right of way passes to the abutting landowners to the centerline of the former right-of-way. Ex parte Jones, 669 So.2d 161 (Ala.1995). The Alabama Supreme Court expressed the applicable rule as follows:
“ ‘It is a general rule that a private conveyance of land bounded by or abutting on a highway or a railroad right-of-way, the fee to which belongs to the abutting owner, is presumed to pass the fee to the right-of-way to the center line thereof, and under certain circumstances to the opposite side. This rule is based on a presumption that the grantor intended to convey such fee along with and as a part of the conveyance of the abutting land, generally on the theory that he did' not intend to retain a narrow strip of land which could hardly be of use or value except to the owner of the adjoining land.
“ ‘This general rule of law seems to have common law origins.... [I]t may be considered as a general rule, that a grant of land bounded upon a highway or river, carries the fee on the highway or river to the centre of it, provided the grantor at the time owned to the centre, and there be no words or specific description to show a contrary intent.... This general rule is also recognized by American commentators: “Where roadbeds or railroad easements are terminated, ownership of the underlying fee usually is presumed to vest in the adjoining land *768 owners, with each taking to the center line of the easement, unless there is evidence that the easement was taken from property on one side more than from property on the other.” ’
“Jones, 669 So.2d at 163-165.
“25. The Port Authority did not prove that the [right-of-way] was taken solely from the property now owned by the Port Authority.
“26. The Court is of the opinion, and therefore concludes, that the general rule regarding divisipn of vacated right-of-way property, as outlined in Jones applies, and further, the exception to the genéral division rule is not operative in the instant case.”[3]
The Port Authority timely appealed. We note at the outset that the relevant facts of this case are undisputed. This court reviews the application of law to undisputed facts de novo. Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996) (“[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”).
The Port Authority contends on appeal that the probate court erred in declaring that MRT be granted title to the underlying fee of the northern half of the right-of-way, in light of the undisputed fact that MRT’s predecessor-in-title, Constantine Lavretta (“Constantine”), had previously conveyed all of his interest in the fee of land on which the right-of-way was situated to the Port Authority’s predecessors-in-title, Delena Lavretta Chapman (“Delena”) and Philomena Lavretta (“Philomena”).[4] The Port Authority also contends that the probate court erred in failing to properly apply the principles of law discussed in Ex parte Jones, 669 So.2d 161 (Ala.1995), given the undisputed facts that at the time the Port Authority’s predecessor, Delena, conveyed her land abutting the right-of-way to the south to The Texas Company (“Texaco”), the right-of-way was situated entirely within her land and that in that conveyance she did not expressly reserve her interest in the right-of-way.
As the probate court stated in its judgment, the right-of-way has been the subject of litigation previously. See City of Mobile v. Chapman, 202 Ala. 194, 79 So. 566 (1918). In addition to the facts recited in the probate court’s judgment, the record reveals the following additional relevant facts. On March 24, 1896, the heirs of John Lawrence Lavretta — a son, Constantine, and two daughters, Delena and Philomena — by cross-conveyances apportioned the land inherited from their father. Included in the property divided was a parcel of land known as the Bell and Brewer tract. The Lavretta heirs divided the Bell and Brewer tract into three lots, each of which was 148 feet and 5 1/3 inches wide (north to south) and ran between Royal Street and the Mobile River (west to east). Constantine conveyed to Delena and Phi-lomena all of his interest in the middle and southern lots. The sisters conveyed to Constantine all of their interest in the northern lot. A map admitted into evidence is referred to in the deed from Constantine to his sisters; likewise, the map refers to the deeds between the heirs.
*769 In the portion of the deeds cross-conveying these lots, no mention is made of Virginia Street. However, the map recorded with the deeds shows that the Lavretta heirs referred to what is now Virginia Street as “Virginia Street Proposed.” It is undisputed that the Lavretta heirs divided the property in a manner that placed the right-of-way entirely within the land taken by the sisters and that the right-of-way that has been vacated by the City is the same parcel of land that the Lavretta heirs referred to as “Virginia Street Proposed.” It is further undisputed that the boundary line between the sisters’ portion of the Bell and Brewer tract and Constantine’s portion ran either along the north line of Virginia Street or 13 inches above the north line of Virginia Street.[5]
Although the probate court, in its judgment, noted that our supreme court in, City of Mobile v. Chapman concluded that, at the time the Lavretta heirs apportioned the Bell and Brewer tract, Virginia Street was already dedicated as a public street running all the way to the Mobile River, 202 Ala. at 201, 79 So. at 573, it failed to note that our supreme court also concluded that Delena owned the property containing Virginia Street subject to the City’s right to use it as a public way:
“[Delena’s] title is not absolute and unin-cumbered to the land in question, ... but that said tract or strip of land is subject to the paramount right of the city of Mobile to use it, as one of the city’s public highways, to the channel of the Mobile river.”
202 Ala. at 202, 79 So. at 574.
On May 26, 1919, Delena conveyed the portion of her two lots abutting the right-of-way on the south to Texaco. The deed from Delena to Texaco contains a metes and bounds description in which the south line of the right-of-way is the north boundary of the property described:
“Beginning at the intersection of the east line of Royal Street with the south line of Virginia Street in said City, running thence in an easterly direction coincident with the south line of Virginia Street a distance of two thousand feet, thence in a southerly direction and at right angles to said south line of said Virginia Street a distancé of two hundred forty-five feet; thence in a westerly direction parallel with and two hundred forty-five feet from the south line of said Virginia Street a distance of two thousand feet to -the east line of said Royal Street; thence northerly coincident with the east line of said Royal Street two hundred forty-five feet to the place of beginning.”
The deed from Delena to Texaco contains no exception or reservation of the fee in the right-of-way. Through mesne conveyances, the Port Authority has become the successor in title to Delena.
On May 2, 1906, approximately 13 years before Delena made her conveyance to Texaco, Constantine conveyed his portion of the Bell and Brewer tract to the Home Dredging Company. At the time of that conveyance, Constantine did not own any interest in the land on which the right-of-way was situated, having previously conveyed his interest in the fee of that land to his sisters, the Port Authority’s predecessors, in the 1896 apportionment among the *770 Lavretta heirs. Through mesne conveyances, MRT has become the successor in title to Constantine.
The dispositive issue presented on appeal is: Who holds the legal title to the land subject to the right-of-way now that the right-of-way has been vacated? The Port Authority argues that this court should apply the following general principles of law discussed in Ex parte Jones, supra, i.e., that “ ‘a private conveyance of land bounded by or abutting on a highway ..., the fee of which belongs to the abutting owner, is .presumed to pass the fee to the right-of-way to the center line thereof, and under certain circumstances to the opposite side,’ ” 669 So.2d at 163 (quoting Standard Oil Co. v. Milner, 275 Ala. 104, 110, 152 So.2d 431, 436 (1962)) (emphasis added), and further “ ‘[wjhere roadbeds ... are terminated, ownership of the underlying fee usually is presumed to vest in the adjoining landowners, with each taking to the center line of the easement, unless there is evidence that the easement was taken from property on one side more than from property on the other.’ ” 669 So.2d at 164 (quoting 7 Thompson on Real Property, Ownership of Roadbeds or Railroad Beds Upon Termination of an Easement, § 60.08(d)(1) (Thomas ed.1994)) (emphasis added).
In Ex parte Jones, our supreme court stated and held:
“In Standard Oil v. Milner, [275 Ala. 104, 152 So.2d 431 (1962),] this Court said:
“ ‘It is a general rule that a private conveyance of land bounded by or abutting on a highway or a railroad right-of-way, the fee to which belongs to the abutting owner, is presumed to pass the fee to the right-of-way to the center line thereof, and under certain circumstances to the opposite side. 8 Am.Jur., Boundaries, § 49, p. 781; 11 C.J.S. Boundaries § 45, pp. 594-596; Tiffany, The Law of Real Property, Vol. 4, § 996, p. 113, n. 93; Annotations: “Description with reference to highway as conveying title to center or side of highway,” 2 A.L.R. 6, 47 A.L.R. 1276, 123 A.L.R. 542, 49 A.L.R.2d 982; “Boundary under conveyance of land bordering on railroad right of way,” 85 A.L.R. 404. This rule is based on a presumption that the grantor intended to convey such fee along with and as a part of the conveyance of the abutting land, generally on the theory that he did not intend to retain a narrow strip of land which could hardly be of use or value except to the owner of the adjoining land.’
“275 Ala. at 110,152 So.2d at 436.
“This general rule of law seems to have common law origins. Sir John Coleridge, a former Judge of the Court of Queen’s Bench, speaking for the Privy Council in Lord v. Sydney, 12 Moore 473, 14 Eng. Rep. 991, 1000 (P.C. 1859), wrote: ‘Mr. Chancellor Kent, in his Commentaries (Ed. 1840), part 6 Lect. 52, p. 438, writes thus: — “... [I]t may be considered as a general rule, that a grant of land bounded upon a highway or river, carries the fee on the highway or river to the centre of it, provided the grantor at the time owned to the centre, and there be no words or specific description to show a contrary intent.” ’ (Emphasis added in [Ex parte Jones].) The general rule is believed to be based on the maxim usque ad filum aquae or viae or ‘up to the middle of the stream or road.’ Black’s Law Dictionary 1544 (6th. ed.1990). This general rule is also recognized by American commentators: ‘Where roadbeds or railroad easements are terminated, ownership of the underlying fee usually is presumed to vest in *771 the adjoining landowners, with each taking to the center line of the easement, unless there is evidence that the easement was taken from property on one side more than from property on the other.’ 7 Thompson on Real Property, Ownership of Roadbeds or Railroad Beds Upon Termination of an Easement § 60.08(d)(1) (Thomas ed.1994). ‘The principle of the rule that the grantee in a private conveyance of land bounded by, or abutting on, a highway the fee to which belongs to the abutting owners is presumed to take the fee to the highway to the center line thereof has generally been regarded as applicable to cases of conveyances bounded by, or abutting on, a railroad right of way.’ 12 Am.Jur.2d Boundaries § 54 (1964) (footnotes omitted).
[[Image here]]
“The Supreme Court of Delaware recently addressed the issue we have here, whether a deed conveying property abutting a railroad right-of-way should be presumed to convey to the center of the right-of-way where the grantor owns the fee that is subject to the right-of-way and does not clearly and expressly reserve a fee interest in the deed. Smith v. Smith, 622 A.2d 642 (Del.1993). That Court adopted the majority rule, writing: ‘A majority of the jurisdictions which have considered this issue appear to have adopted the rule that a grantee in a private conveyance of property bounded by or abutting a railroad right of way, the fee to which belongs to the abutting owners, is presumed to take the fee to the centerline of the right of way. 12 Am.Jur.2d. Boundaries § 54.’ 622 A.2d at 647. The Delaware Supreme Court cited in support of its decision Fleck v. Universal-Cyclops Steel Corp., 397 Pa. 648, 156 A.2d 832 (1959), which had held: ‘It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement.’ 397 Pa. at 650, 156 A.2d at 834. The Pennsylvania court further ruled that ‘[a] railroad is a highway within the meaning of this rule.’ Id. The extension of the ‘highway presumption’ to railroad rights-of-way has been deemed ‘appropriate’ unless ‘the grantor has expressly reserved the fee to the right of way, or the grantor’s intention to not convey the fee is clear.’ Roeder Co. v. Burlington Northern, Inc., 105 Wash.2d 567, 575, 716 P.2d 855, 861 (1986). ‘The presumption has been upheld in favor of adjacent property grantees even where a deed description, by metes and bounds, extended the grant only to the boundary of the abandoned railroad right of way.’ Smith, 622 A.2d at 648; see Vaughn v. Fitzgerald, 511 P.2d 1148, 1151-52 (Okl.App.1973). There are minority views on the application of the presumption, especially as regards abandoned railroad beds. The Maine Supreme Court, in Stuart v. Fox, 129 Me. 407, 152 A. 413 (1930), rejected the ‘highway easement’ presumption as not applicable to railroad rights-o'f-way because the railroad easement ‘is obviously vastly different from that in lands appropriated to the various kinds of other public ways’ and the grantor of the right-of-way is considered to derive no future benefit from the underlying land. 129 Me. at 415, 152 A. at 417 (quoting Hayden v. Skillings, 78 Me. 413, 6 A. 830, 831 (1886)).
“The Delaware Court, in Smith v. Smith, in adopting the majority rule, reasoned:
“ ‘In our view, the majority rule better serves the underlying rationale for the presumption as expressed in du-Font [v. American Life Insurance Co., 41 Del.Ch. 33, 187 A.2d 421 *772 (1963) ] — the avoidance of vexatious litigation “as a matter of policy.” du-Pont, 187 A.2d at 423. As one court noted: “the existence of narrow strips of land distinct in ownership from the adjoining territory would create a prolific source of litigation.” Cuneo v. Champlin Refining Co., 178 Okl. 198, 62 P.2d 82 (1936). The fact that the origin of these narrow parcels lies in former highway or public use rather than in railroad use does not lessen their potential for controversy. Moreover, as is suggested in the present dispute, the conversion of abandoned railroad rights of way to vehicular roadways would impose upon the adjacent property owners the prospect of exposure to a more onerous and higher volume of traffic than that contemplated by a branch line railroad right of way. Without ownership of the underlying fee, an adjacent property owner would be required to accept a change in easement which places a different burden upon the adjacent property. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080 (1932).
“‘As a practical matter when one acquires property adjacent to a right of way, the potential for abandonment of the right of way exists. The grant- or, may, of course, reserve to himself that entitlement, analogous to a future interest, by expressing such intention in the grant. Where the grantor fails to do so, it seems unreasonable to presume that the grantor does not intend to convey title to the centerline of the easement. That result should not depend on the use to which that easement is dedicated.
“ ‘In our view, the presumption that “unless the original grantors expressly [reserve] in themselves legal title to [an] alleyway, title is deemed to have been intended to pass to the respective grantees to the midline of the alley,” duPont, 187 A.2d at 423, also applies to the conveyance of property bordering, or abutting on, a railroad right of way.’
“Smith, 622 A.2d at 648.
“We agree with the reasoning of the Supreme Court of Delaware, and hereby adopt the majority rule, that unless the original grantor of the abandoned right-of-way has, when making a later conveyance, expressly reserved legal title to the land subject to the right-of-way, the grantor is presumed to have intended to pass title to the abutting landowners to the center line of the right-of-way. In applying this rule to the present facts, we hold that the Court of Civil Appeals and the trial court erred. When the original grantor, Jason G. Jones, conveyed land to these parties’ predecessors in title, he did not expressly reserve to himself legal title to the land subject to the right-of-way in the event the right-of-way was abandoned. Accordingly, the legal title is deemed to have passed to these parties’ predecessors, whose ownership extended to the center line of the right-of-way in case of its abandonment.”
Ex parte Jones, 669 So.2d at 163-65.
The Port Authority also refers this court to caselaw from other jurisdictions addressing instances in which a grantor conveying property abutting a right-of-way is presumed to have passed title to the underlying fee to the entire width of the right-of-way and not merely to the center line of that right-of-way. See, e.g., Weldon v. Heron, 78 N.M. 427, 428, 432 P.2d 392, 393 (1967) (“[Wjhere the street or road was laid out along the margin of a subdivision and wholly therein, a conveyance of a parcel thereof abutting on the *773 highway ordinarily includes title to the farther edge of the highway.”); Wolff v. Veterans of Foreign Wars, Post 4715, 5 N.J. 143, 152, 74 A.2d 253, 257 (1950) (“ ‘Where the highway has been ... wholly made from and upon the margin of the grantor’s land, his subsequent grant of the adjoining land should be deemed to comprehend the fee in the whole roadbed, upon the same principle that exists for giving the fee to the center in other cases.’ ” (Quoting Haberman v. Baker, 128 N.Y. 253, 259, 28 N.E. 370, 371 (1891))); Cantley v. Gulf Prod. Co., 135 Tex. 339, 346, 143 S.W.2d 912, 915-16 (1940) (“ “Where a highway is laid off entirely on the owner’s land, running along the margin of his tract, and he afterward conveys the land, the fee in the whole of the soil of the highway vests in his grantee.’ ” (Quoting 9 C.J. Boundaries § 97)); Neil v. Independent Realty Co., 317 Mo. 1235, 1244, 298 S.W. 363, 366 (1927) (“[I]f [a] highway is taken wholly from one man’s property and such highway is vacated, the land in fee reverts to the original owner, or his grantees, freed from public use or easement.”).
The most illustrative of these cases is Neil v. Independent Realty Co., supra. In Neil, the plaintiffs’ predecessor had purchased four contiguous lots which formed the northern half of a subdivision. The defendants’ predecessor had purchased the four lots comprising the southern half of the subdivision. Thereafter, the plaintiffs’ predecessor re-subdivided the northern half of the original subdivision and laid out a street 25 feet wide as the southernmost 25 feet of the re-subdivision. In other words, the south line of the new street was the north line of the southern half of the original subdivision. The City of Kansas later vacated the street. In an action to quite title, the plaintiffs claimed the fee-simple title to the entire width of the right-of-way on the ground that the right-of-way had been situated entirely within the lands of their predecessor. The defendant claimed title to the south 12.5 feet of the right-of-way, arguing that it owned that portion of the fee to the right-of-way because it was an abutting owner. The trial court entered judgment in favor of the plaintiffs. The Supreme Court of Missouri affirmed the judgment of the trial court, discussing the issue as follows:
“The general rule as announced by the common law was that the adjoining owners each held title to the center of the road or street, but this was founded upon the presumption or assumption that the parties had each contributed equally to the street or highway. This was not a hard and fast rule, but the presumption could be rebutted by the facts. An illustrative and leading case is Watrous v. Southworth, 5 Conn. loc. cit. 310 (star page), whereat it is said:
“ ‘It is a general rule of the common law that the fee of the land over which a highway passes is owned equally by the owners of the adjoining ground. Stiles et al. v. Curtis, 4 Day [Conn.] 328; Peck v. Smith, 1 Conn. 103(a) [6 Am. Dec. 216]. This rule, however, is not artificial, and of positive institution, but is founded on the presumption, in absence of proof, that the highway was originally granted, by the adjoining proprietors, over their land, in equal proportion. This is not a presumptio juris et de jure, but a reasonable presumption, based on probability. Where it appears, however, that the highway was laid wholly over the land of one person, the presumption is annulled; and to hold, by inference, against fact, that the fee of one person should be extended beyond his land, and of the other restrained to narrower limits, because he had been paid for' a right of passage over a part of his soil, would be a *774 most inequitable fiction, in opposition to the established maxim, that in fic-tione juris semper existit aequitas. I can conceive of no principle of policy or general convenience that countenances so wanton a sacrifice of private justice.
“ ‘In the before-cited case of Peck v. Smith, p. 127, it was said, by Edmond, J., that to any general rule that can be adopted in relation to highways there must be exceptions; and with the same learned judge I fully concur in the following observations: “A. owns a piece of land; a highway is laid across the middle of it; the fee remains in A. Again, A. and B. own land adjoining; a highway is laid wholly on A.’s land, but bounding on the land of B. Here, it is clear, the fee of the way remains in A., as much as in the first case; for laying a servitude on the land of A. cannot transfer any part of the fee to B., although, by laying out the road, B. has become an adjoining proprietor. Take one case more: A. owns land; B. owns land adjoining on each side of it; the whole of the land of A. is laid out for a road. Will it be said, in such case, that the fee is transferred from A. to B.? I think it cannot be said with reason, because proof of such a set of facts in respect to the laying out of the road, and the circumstances of ownership continuing the same, as at the time of the laying out, rebuts and oversets entirely the presumption, that the road was originally laid on B.’s land, or the land of those under whom he claims.” To the same effect was the opinion of the late Ch. J. Swift, delivered in the before-mentioned case.’
“The case of Watrous v. Southworth, supra, is cited with approval by Church, C.J., in Read v. Leeds, 19 Conn. loc. cit. 187. In Healey v. Babbitt, 14 R.I. loc. cit. 534, it is said:
“ ‘In Hughes v. Providence & Worcester Railroad Co., 2 R.I. 493, 512, this court laid down the rule governing the construction of deeds in cases of lands bounded on highways in the following language, namely: “This court ha[s] repeatedly ruled, and it may now be considered the settled policy of the state, that where a deed bounds the grantee to, by, or on, a highway, ... the presumption of law is, that the grantee takes the fee of the soil to the center of the highway ... if the grantor, at the time, owned the fee to the center, subject to the right of the public in the easement; unless there be established monuments, or other clear description in the deed, to rebut this presumption, and show that the intention was to limit the grant to the line of the highway.” ... And see, also, Tingley Bros. v. City of Providence, 8 R.I. 493, 506. That such is the general rule of law, see the discussion and cases collected in the note to Dovaston v. Payne, 2 Smith’s Lead. Cas. 216; Tyler’s Law of Boundaries, etc., pp. 103-114; Cox v. Louisville, etc., R.R. Co., 48 Ind. 178-185, 188; Jarstadt v. Morgan. 48 Wis. 245, 249 [4 N.W. 27]; Tousley v. Galena Mining & Smelting Co., 24 Kan. 328. 331-333.
“ ‘This presumption, however, that the grantee takes the fee of the soil to the center of the highway, is not absolute and conclusive. It is created, or rather allowed, in the absence of proof, and is based upon the idea that when the street or highway was laid out, the proprietors upon each side contributed their land for the purpose, in equal portions. When it appears that such was not the fact, the presumption does not arise.’
*775 “The court then cites, approves, and quotes from Watrous v. Southworth. supra. Along the same general line is-the case of In re Robbins, 34 Minn. loc. cit. 101, 24 N.W. 356, 57 Am. Rep. 40, whereat it is said:
“ ‘The question here presented is whether, where a street or alley is laid wholly on one’s own land, and is located on the margin of his tract, so that he owns nothing beyond (the adjoining proprietor having no interest in the fee of such street or alley), the whole of the street opposite a lot designated as such in a deed, and bounded on the street, passes to a grantee of the original proprietor.
“ “Where, by the terms of a deed, the land conveyed is bounded by a street or highway, the grantee takes presumptively ad fílum viae as the natural boundary line between opposite proprietors; the reason of the rule being that the adjoining owners are presumed to have originally furnished the land in equal proportions for the sole purpose of a highway. Dunham v. Williams, 37 N.Y. 251; Stiles v. Curtis, 4 Day [Conn.] 328; Woolrych on Ways, *5. So, a deed of lots conveyed as represented in a town plat, is presumed to include a grant of the soil to the center of the street, and it passes as parcel of the land and not as an appurtenant. Bissell v. New York Central R. Co., 23 N.Y. 61. This presumption, however, yields when a different intention is clearly manifested, or when the evidence shows there could be no foundation for it, as where the grantor at the time owned no part of the street, the same being wholly laid on the land of another. Dunham v. Williams, supra; King’s Co. Ins. Co. v. Stevens, 87 N.Y. 287, 293, 294 [41 Am. Rep. 361]; 3 Kent, Comm. *434; Champlin v. Pendleton, 13 Conn. 23; Watrous v. Southworth, 5 Conn. 305; Peck v. Smith, 1 Conn. 103, 146 [6 Am. Dec. 216],
“ ‘In arriving at a proper construction of the effect of a deed granting lots bounded on a street, and the intention of the parties thereto in respect to the extent of the grant in the street, regard must be had to the situation of the lots and streets and the state of the title, as well as the language of the deed. “This is the recognized rule of interpretation, and it is a question of interpretation and intent” Mott v. Mott, 68 N.Y. 246, 253; Bliss v. Johnson, 73 N.Y. 529; Webber v. Eastern R. Co., 2 Metc. [Mass.] 147.’
“Another early leading case, discussing the common-law rule, is Taylor et al. v. Armstrong et al., 24 Ark. loc. cit. 107, whereat it is said:
“ ‘If a highway be laid out through the land of A. and he afterwards conveys the land upon one side of the highway to B. and the land upon the other to C., without reservation, they become the owners of the fee in the soil of the highway equally, each owning to the center.
“ ‘So if A. and B., being the proprietors of adjoining tracts of land, contribute equal quantities of land to a highway, and afterwards convey their lands respectively, their grantees become the owners of the fee in the soil of the highway equally, each going to the center.
“ ‘But if a highway be laid off entirely upon the land of A. running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee. Watrous v. Southworth, 5 Conn. 305; Chatham v. *776 Brainerd et al., 11 Id. [Conn. 60]; Champlin v. Pendleton, 13 Id. [Conn. 23]; Read v. Leeds, 19 Id. [Conn.] 187.
“ ‘The same rules are applicable to streets in towns and cities. Hammond et al. v. McLachlan [3 N.Y.Super. Ct. 323] 1 Sandford, 323; Post v. Pearsall, 22 Wend. [N.Y.] 425; Mayor and Council of Macon v. Franklin, 12 Ga. 245; Trustees of Watertown v. Cowen, 34[4] Paige [N.Y.] 513; State v. Mayor and Ald. Mobile, 5 Port. [Ala.] 309 [30 Am. Dec. 564]; Ang. on High. 293-303; [Van] O’Linda v. Lothrop, 21 Pick. [Mass.] 295[2]; Barclay et al. v. Howell’s Lessee, 6 Pet. 499 [8 L.Ed. 477]; New Orleans v. United States, 10 Pet. 633[662] [9 L.Ed. 573]; Dovaston v. Payne, 2 Smith’s Lead. Cas. 218, and cases cited.’
“The foregoing follows an extensive quotation from Kent on the law as to public highways, which quotation is well worth reading.
“So it appears that the common-law rule to the effect that adjoining owners had title to the middle of the highway rested upon the presumption that they had contributed equally to the road, but if the facts showed the contrary the rule did not apply. In other words, the facts would govern rather than the mere presumption. Out of this grew the rule that if the highway is taken wholly from one man’s property and such highway is vacated, the land in fee reverts to the original owner, or his grantees, freed from the public use or easement.”
Neil, 317 Mo. at 1241-44, 298 S.W. at 365-66 (emphasis added).
MRT argues, on the other hand, that Standard Oil Co. v. Milner, 275 Ala. 104, 152 So.2d 431 (1962), is the controlling caselaw applicable to facts in this case. In Milner, the supreme court held that a grantor’s conveyance of land abutting a right-of-way did not pass the fee ownership to the right-of-way where, among other reasons, the grantor used the south line of the right-of-way as the boundary line in the deed conveying the property south of the right-of-way. 275 Ala. at 110-11, 152 So.2d at 436-37.
However, Ex parte Jones was decided after Milner, and in Ex parte Jones the supreme court limited its previous holding in Milner to the specific facts in that case:
“Although this Court, in [Milner], held that the grantor never intended to convey the fee to the land subject to the right-of-way in that case, it seems apparent in that case that this Court, based on the facts of that ease, determined that when the grantor conveyed land south of a railroad right-of-way by a deed that described the tract conveyed as running to the southern line of the right-of-way and thence in a northeasterly direction along the right-of-way line, did not intend to pass any title as to land within the right-of-way. In that case, this Court found that the intention of the grantor could be ascertained without benefit of the presumption.”
Ex parte Jones, 669 So.2d at 164.
In Milner, our supreme court also recognized that a grantor conveying land abutting a right-of-way must be the owner of the underlying fee to that right-of-way in order for it to be presumed that that grantor conveyed to the grantee the fee title to the center of the right-of-way, and under some circumstances to the other side. 275 Ala. at 110, 113, 152 So.2d at 436, 439. “[T]o say that a person acquiring title to an abutting lot thereby acquires a fee in the [right-of-way], even though his grantor could not have conveyed such fee, would have the effect of taking property from one owner and giving it to another. The constitutional implications are obvious.” 275 Ala. at 112, 152 So.2d at 439. Thus Milner rejected the notion that one can acquire the fee ownership to a vacated *777 right-of-way merely because one is an abutting landowner. Milner, 275 Ala. at 112-13, 152 So.2d at 438-39.
In applying the foregoing principles of law to the facts in the present case, we conclude that the probate court erred in granting MRT fee title to the center line of the right-of-way. In this case, the undisputed facts establish that at the time the Lavretta heirs apportioned the Bell and Brewer tract the right-of-way was situated entirely within the portion taken by Delena and Philomena; Constantine conveyed to his sisters all of his interest in the land on which the right-of-way was located. In exchange, Constantine received the northernmost portion of the Bell and Brewer tract, which was not encumbered by the right-of-way. Delena later conveyed the land abutting the right-of-way to the south to Texaco without expressly reserving the right-of-way.[6] Although Delena’s deed to Texaco, by metes and bounds, described the northern boundary of the property as the southern boundary of the right-of-way, as noted in Ex parte Jones, a grantor may be presumed to' have conveyed the fee in the right-of-way to the center line and under some circumstances to the entire width of the right-of-way “ ‘even where a deed description by metes and bounds, extend[s] the grant only to the boundary of the abandoned ... right-of-way.’ ” 669 So.2d at 165 (quoting Smith v. Smith, 622 A.2d 642, 648 (Del.1993)). Because the grantor must be the owner of the fee underlying the right-of-way in order for the presumption to apply, Milner, 275 Ala. at 110, 113, 152 So.2d at 436, 439, we conclude that Delena’s conveyance to Texaco contained the entire width of the right-of-way because Delena owned the underlying fee to the right-of-way and Constantine owned none of it. Thus, “ ‘there is evidence that the easement was taken from property on one side more than from property on the other.’ ” Ex parte Jones, 669 So.2d at 164 (quoting Thompson, supra, § 60.08(d)(1)). As previously stated, through mesne conveyances, the Port Authority has become the successor in title to Delena, and, accordingly, the probate court, upon vacation of the right-of-way, should have vested the fee title to the entire width of the right-of-way in the Port Authority. Based on the foregoing, the judgment of the probate court awarding MRT title to the northern half of the right-of-way is reversed, and the cause is remanded for the probate court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and MURDOCK, JJ., concur.
PITTMAN, J., recuses himself.

. The City has never paved the right-of-way or opened it up or used it for public purposes, except to lay a storm drain and a sewer line. Instead, the right-of-way has been utilized by MRT and The Texas Company ("Texaco”), the Port Authority's predecessor, for their respective business purposes.
Although the City never owned the right-of-way in fee simple, it nevertheless granted Texaco a long-term lease to the right-of-way from 1919 through 1997; in turn, Texaco subleased portions of the right-of-way to MRT from 1971 to 1997. Although both Texaco and MRT at times expressed an interest in purchasing the right-of-way from the City, those proposals failed to progress when title searches revealed that the City’s interest was *765 a public right-of-way that could not be conveyed in fee simple.

. The judgment further declared that the vacating of-the right-of-way was subject to the reserved easements of the City, the Board of Water and Sewer Commissioners of the City, BellSouth Communications, Inc., Mobile Gas Service Corporation, and Alabama Power Company.

. The probate court also found that, given its ruling as to the division of the title to the right-of-way, it was not necessary for it to address MRT’s alternative argument that MRT adversely possessed portions of the right-of-way. It is clear from our review of the record that that claim was implicitly denied by the probate court. MRT did not appeal the probate court's denial of that claim; therefore, that issue is not before this court.

. It is undisputed that Delena inherited Phi-lomena’s interest in the land abutting the right-of-way.

. There was testimony at the August 28, 2003, hearing, that the boundary line between Constantine's portion of the Bell and Brewer tract and the sisters’ portion ran along the north line of the right-of-way. There was also some indication in City of Mobile v. Chapman that the boundary line ran 13 inches above the north line of Virginia Street. 202 Ala. at 197, 198, 79 So. at 569, 570.

. Although Delena was not the original grant- or of the right-of-way to the City, she owned the land on which the right-of-way was situated at the time of her 1919 conveyance to Texaco. Additionally, this case is unique in that it involves a situation where the predecessor of the party abutting the right-of-way on one side had previously conveyed his interest in the right-of-way to the predecessor of the party who had acquired the property abutting the other side of the right-of-way.